# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRIAN MATTHEW EVANS,

        Defendant-Appellant.

UNPUBLISHED
December 18, 2014

No. 317577
Wayne Circuit Court
LC No. 12-003028-FC

Before: MURRAY, P.J., and SAAD and HOEKSTRA, JJ.

PER CURIAM.

A jury convicted defendant of first-degree felony-murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, torture, MCL 750.85, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant as an habitual offender, fourth offense, MCL 769.12, to life imprisonment without parole for the felony-murder conviction, 75 to 120 years' imprisonment for the armed robbery and torture convictions, 40 to 60 months' imprisonment for the felon-in-possession conviction, and a consecutive two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right. For the reasons explained below, we affirm.

Defendant's convictions arise from the January 18, 2012, shooting death of Hussan Hussein, an attendant at a gas station in the city of Highland Park, Michigan. The gas station attendant is separated from the public behind a partitioned area. The door that allows customers entry into the store is equipped with a locking mechanism that allows the attendant to "buzz" a customer into the store from behind the partition. It was the prosecutor's theory of the case that codefendant Norwood Witherspoon entered the gas station, went to the beverage coolers, selected a juice, and deliberately broke the glass bottle. He then selected another juice, purchased it, and left the store. When Witherspoon left the store, a person identified as defendant was captured on surveillance video placing a stick in the door to prevent it from locking. The victim left the partitioned area to clean up the broken bottle when defendant entered with his face partially obscured. The victim was shot three times, twice in the legs and a fatal shot to the chest. Defendant confessed the crimes to his then-wife, Tanganyika Felton, and he gave Felton his cellular telephone, which she turned over to the police. An analysis of the cellular telephones of Witherspoon and defendant disclosed that the telephones placed calls to each other in the vicinity of the gas station at the time of the shooting. Additionally, both men were identified on the station's video surveillance recording by their respective parole officers.

-1-

## I. EVIDENCE OF DEFENDANT'S PAROLEE STATUS

Defendant first argues that the prosecutor engaged in misconduct by introducing prejudicial evidence revealing that defendant was on parole at the time of the present offenses. Defendant also argues that defense counsel was ineffective for failing to object to this evidence.

There was no objection to the prosecutor's conduct at trial. Accordingly, this issue is unpreserved and our review is limited to plain error affecting defendant's substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v McCuller*, 479 Mich 672, 695; 739 NW2d 563 (2007) (further citation and punctuation omitted). Error requiring reversal will not be found when a curative instruction could have displaced any prejudicial effect of the prosecutor's improper argument. See *People v Johnigan*, 265 Mich App 463, 467; 696 NW2d 724 (2005).

Questions of prosecutorial misconduct are decided on a case-by-case basis, and the prosecutor's conduct must be evaluated in context. *Roscoe*, 303 Mich App at 648. When determining whether prosecutorial misconduct deprived a defendant of a fair and impartial trial, the defendant bears the burden of demonstrating that the conduct resulted in a miscarriage of justice. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). A prosecutor's good-faith effort to introduce evidence does not constitute misconduct. *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007).

Defendant argues that the prosecutor engaged in misconduct by introducing evidence that he was on parole at the time of the offense. In particular, the prosecutor introduced the testimony of defendant's parole officer, Edward Heard, who testified that he was familiar with defendant from acting as defendant's parole officer. Heard viewed video surveillance footage of the gunman at the gas station. Although the assailant was wearing a mask, Heard testified that he was able to identify the assailant as defendant based on the assailant's distinctive eyebrows and other exposed features. He also modified a photograph of defendant with black marker to reflect where the perpetrator in the video was wearing a mask.

Defendant does not challenge Heard's identification testimony, but instead contends that the evidence of his parole status was unduly prejudicial and inadmissible under MRE 404(b)(1) because it revealed that he had a prior criminal record. MRE 404(b)(1) prohibits evidence of a defendant's prior bad acts to prove a defendant's character or propensity to commit the charged crime, but permits such evidence for other permissible purposes, including to prove identity. Heard's testimony, including his status as defendant's parole officer, was relevant to the issue of identity and, in particular, Heard's ability to identify defendant. The prosecutor is required to prove the identity of the defendant as the perpetrator of a charged offense beyond a reasonable doubt. *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976); *People v Kern*, 6 Mich App 406, 409; 149 NW2d 216 (1967). Heard's status as defendant's parole officer explained the nature of his relationship to defendant and his degree of familiarity with defendant, factors that were relevant to the weight and reliability of Heard's identification testimony.

Even if evidence is relevant and offered for a non-propensity purpose, it may be excluded under MRE 403 if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. See *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). To some extent, all relevant evidence is prejudicial, and therefore, only unfairly prejudicial evidence will be excluded. *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005). "Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury." *Id*. at 614. Unfair prejudice considers whether the proposed evidence will adversely affect the objecting party's position by inserting extraneous consideration such as jury bias, sympathy, anger, or shock. *Id*.

Defendant acknowledges that the jury was already aware of his status as a convicted felon because he stipulated that he was previously convicted of an unspecified felony for purposes of the felon-in-possession charge. Although defendant asserts that the stipulation did not result in a waiver of this issue, it is nonetheless relevant to an analysis of whether defendant was unfairly prejudiced by the evidence of his parole status. The stipulation served to inform the jury that defendant had previously been convicted of a felony. Because the jury was already aware from the stipulation that defendant was a convicted felon, Heard's identity as defendant's parole officer, apart from being independently relevant to the issue of defendant's identification as a perpetrator, carried little risk of unfair prejudice. See *People v McDonald*, 303 Mich App 424, 436; 844 NW2d 168 (2013) ("The danger in revealing a defendant's parolee status is that a jury will recognize that the defendant had previously been convicted of a crime, but that was already known here [because the defendant stipulated that he had a prior felony conviction], so the requisite prejudice allegedly stemming from the parole references has not been shown."). Moreover, precautions were taken to protect defendant's substantial rights by not revealing the nature of defendant's prior crimes and by admonishing witnesses from avoiding improper testimony. In sum, the record discloses that Heard's identity as defendant's parole officer was at least arguably admissible for limited, relevant purposes, and that precautions were taken to avoid the introduction of evidence of defendant's criminal history beyond those limited permissible purposes. Accordingly, the prosecutor's good faith effort to introduce this evidence did not constitute misconduct. See *Dobek*, 274 Mich App at 70. Defendant has not shown plain error.

Alternatively, defendant also argues that defense counsel was ineffective for failing to object to the repeated references to his parole status and prior incarceration. Because defendant failed to raise an ineffective assistance of counsel claim in the trial court, our review of this issue is limited to mistakes apparent on the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). "Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). To establish a claim of ineffective assistance of counsel, a defendant must demonstrate (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there exists a reasonable probability that absent counsel's errors, the result of the proceeding would have been different. *People v Lopez*, 305 Mich App 686, 694; 854 NW2d 205 (2014). "There is a presumption that defense counsel was effective, and a defendant must overcome the strong presumption that counsel's performance was sound trial strategy." *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011).

Defendant argues that defense counsel's failure to object to the evidence of his parole status and prior incarceration cannot be characterized as sound trial strategy. As previously

indicated, however, the evidence was relevant and admissible to the issue of defendant's identity as a perpetrator of the charged crimes, meaning that any objection by defense counsel would have proved futile. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Moreover, the record reveals that, rather than object, defense counsel made the strategic decision to use Heard's status as defendant's parole officer to attempt to undermine the credibility of Heard's testimony. In his closing argument, defense counsel pointed out discrepancies in Heard's trial testimony and prior statements, and argued that Heard's identification of defendant was motivated by a personal "agenda" that Heard had against defendant. It was necessary for the jury to know the nature of Heard's relationship with defendant in order for counsel to effectively argue that Heard had an agenda. And, given the jury's awareness that defendant was a convicted felon as well as the other evidence of defendant's guilt, including telephone records and his confession to Felton, defendant has not shown that, but for counsel's performance, there was a reasonable probability of a different outcome. Accordingly, defendant has failed to demonstrate the ineffective assistance of counsel.

## II. FELTON'S PRELIMINARY EXAMINATION TESTIMONY

Next, defendant argues that the trial court erred in admitting the preliminary examination testimony of his ex-wife, Tanganyika Felton, at trial. In particular, defendant maintains that the prosecution failed to exercise due diligence in procuring Felton's attendance at trial. He also asserts that he was denied his constitutional right to confront witnesses against him because his defense counsel at the preliminary examination failed to adequately cross examine Felton.

The trial court admitted Felton's preliminary examination testimony pursuant to MRE 804(b)(1) after determining that Felton was unavailable to testify at trial. MRE 804(b)(1) provides that the following type of evidence is not excluded by the hearsay rule if the declarant is unavailable as a witness:

> Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

For purposes of this rule, "unavailability" includes a situation in which the declarant

> is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown. [MRE 804(a)(5).]

The trial court's determination regarding due diligence is reviewed for an abuse of discretion. *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004). "Due diligence is the attempt to do everything reasonable, not everything possible, to obtain the presence of [a] witness." *People v Cummings*, 171 Mich App 577, 585; 430 NW2d 790 (1988) (citation omitted). In other words, "[t]he test for due diligence is one of reasonableness, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *People v James (After Remand)*, 192 Mich App 568, 571; 481

NW2d 715 (1992). Whether the prosecutor has exercised due diligence depends on the facts and circumstances of the particular case. *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998).

In this case, testimony disclosed that Detective Paul Thomas obtained a witness statement from Felton on January 24, 2012 and that she appeared, pursuant to a subpoena, for defendant's preliminary examination on March 23, 2012. Detective Thomas kept in touch with Felton throughout the adjournments of the trial to ensure that he knew her current location and to keep her informed about the status of the trial. Additionally, Detective Thomas served Felton with subpoenas for the prior trial dates and, when served, Felton never indicated that she was unwilling to testify. With regard to the current trial date, Detective Thomas was able to personally serve Felton at her residence, and she in fact appeared in person on the first day of trial.[1] Detective Thomas spoke with Felton on several occasions during trial, including on June 10, 2013 via telephone when he reached Felton and advised her to come to court as soon as possible. Felton indicated she would make preparations to come to trial, but, when Detective Thomas did not hear from her, he called her again. At that time, she expressed fear and wished to testify in disguise. After this conversation with Detective Thomas, she failed to answer her telephone and she left her residence. Detective Thomas made several telephone calls and left numerous messages on Felton's voicemail. He also went to Felton's known address multiple times and checked another address based on information he received, but he was unable to locate Felton. Although Detective Thomas reached Felton's current husband, her husband indicated that Felton was afraid, had left, and did not state where she was going.

Defendant contends that due diligence was not exercised because Detective Thomas failed to check utilities, hospitals, jails, and the morgue. However, the reasonableness of Detective Thomas's efforts to locate Felton must be evaluated in light of the facts and circumstances, including the information he learned during his search. Detective Thomas had recently spoken to Felton, he had maintained steady contact with Felton throughout the proceedings, and Detective Thomas knew her residential address. Indeed, Felton had been successfully subpoenaed and she in fact appeared on the first day of trial. It is apparent that Felton chose to remove herself from available locations to avoid testifying at trial. In light of the information from Felton's husband that Felton had left because of fear, there was no reason to search hospitals, jails, and the morgue. Even defendant utilized an investigator to search for Felton, and he too was unable to locate her. In light of the record, we do not know what further efforts could have been reasonably expected from the police. Cf. *People v Jackson*, 467 Mich 272, 279; 650 NW2d 665 (2002). The trial court did not abuse its discretion in finding that the prosecutor had exercised due diligence. See *id.*

---

[1] Given that the prosecution served Felton with a subpoena and she in fact appeared pursuant to that subpoena on the first day of trial, it is questionable whether the due diligence requirement applies in this case. See *People v Adams*, 233 Mich App 652, 659 n 5; 592 NW2d 794 (1999) ("We can find no cases, and the parties present none, where the due diligence requirement has been applied to witnesses who appear to testify and then disappear before testifying.").

Defendant also argues that the admission of Felton's preliminary examination testimony violated the Confrontation Clause. "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." US Const, Am VI. See also Const 1963, art 1, § 20. The Confrontation Clause bars the admission of testimonial statements by a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v Washington*, 541 US 36, 59, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004).

In this case, it is undisputed that Felton's preliminary examination testimony is testimonial in nature. Therefore, its admission implicates defendant's constitutional right of confrontation. Defendant concedes, however, that defense counsel was afforded an opportunity to cross-examine Felton at the preliminary examination, and he does not contend that any limits were placed on counsel's cross-examination that precluded an opportunity for effective cross-examination. Instead, he only argues that defense counsel was ineffective in the manner in which he cross-examined Felton at the preliminary examination. Any purported deficiencies in counsel's questioning do not entitle defendant to relief, however, because the Confrontation Clause only guarantees a defendant an *opportunity* for effective cross-examination. *United States v Owens*, 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988). It does not assure "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* In short, because defendant had an opportunity to cross-examine Felton at his preliminary examination, admission of her previous testimony at trial did not violate defendant's right of confrontation. See *Crawford*, 541 US at 59, 68; *People v Meredith*, 459 Mich 62, 71; 586 NW2d 538 (1998).

Insofar as defendant claims that defense counsel was ineffective for failing to effectively cross-examine Felton at the preliminary examination, defendant fails to establish the factual predicate for his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Defendant asserts that counsel should have impeached Felton with her prior police statement and with prior testimony that she gave pursuant to an investigative subpoena, both of which defendant maintains were inconsistent with her preliminary examination testimony. However, defendant fails to identify any specific prior statement or testimony that he believes would have impeached Felton's preliminary examination testimony.[2] Therefore, defendant has not provided factual support for his claim, *id.*, and he has not overcome the presumption that counsel's decision regarding how to question Felton was a matter of strategy, see *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Consequently, we cannot conclude that counsel's performance was objectively unreasonable or that, but for counsel's performance, there was a reasonable probability of a different outcome, and thus defendant has not demonstrated the ineffective assistance of counsel.

## III. MISSING WITNESS INSTRUCTION

---

[2] Curiously, at trial, defendant, who then had a different attorney, in fact declined the prosecutor's offer to introduce Felton's prior statements in order to argue any discrepancies before the jury.

Lastly, defendant argues that the trial court erred by failing to provide a missing witness instruction with respect to Felton. In particular, he maintains that, given the prosecution's failure to produce Felton's testimony at trial, he was entitled to an instruction that would allow the jury to infer that Felton's trial testimony would have been unfavorable to the prosecution.

Claims of instructional error are reviewed de novo. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). However, the trial court's determination that a requested instruction is inapplicable given the facts of the case is reviewed for an abuse of discretion. *People v Hartuniewicz*, 294 Mich App 237, 242; 816 NW2d 442 (2011). More specifically, we review a trial court's determination of due diligence and the appropriateness of a "missing witness" instruction for an abuse of discretion. *Eccles*, 260 Mich App at 389.

Upon endorsement of a witness, the prosecutor must exercise due diligence to produce the witness for trial. *People v Duenaz*, 306 Mich App 85, 104; 854 NW2d 531 (2014). If the court concludes that the prosecutor failed to exercise due diligence to produce an endorsed witness, it may give a missing witness instruction, see M Crim JI 5.12, which permits the jury to infer that the testimony of the missing witness would have been unfavorable to the prosecution's case. *Duenaz*, 306 Mich App at 104. However, the prosecutor may be relieved of the obligation to produce the witness by demonstrating that the witness could not be produced despite the exercise of due diligence. *Eccles*, 260 Mich App at 388. If the trial court finds the prosecutor exercised due diligence, a defendant is not entitled to a missing witness instruction. See *id.*

In this case, as previously explained, the trial court did not abuse its discretion in finding that the prosecutor exercised due diligence in attempting to produce Felton for trial. Therefore, defendant was not entitled to a missing witness instruction.

Affirmed.

/s/ Christopher M. Murray
/s/ Henry William Saad
/s/ Joel P. Hoekstra

-7-