# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

V

HAIDER TOMAZ,

        Defendant-Appellant.

UNPUBLISHED
April 21, 2015

No. 318663
Wayne Circuit Court
LC No. 13-001199-01-FC

Before: M. J. KELLY, P.J., AND WILDER AND K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder of Hussain Aljibory, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 40 to 60 years in prison for the second-degree murder conviction and two years in prison for the felony-firearm conviction. We affirm.

I

Minutes before the shooting death of Aljibory at his lower-level flat on September 11, 2012, defendant's cellular phone was used in a cellular sector near Aljibory's flat and, at 9:43 p.m., exterior security cameras neighboring Aljibory's flat recorded an SUV pull up near Aljibory's house. Sergeant Robert Wellman, a member of the commercial auto theft section of the Detroit Police Department, reviewed the footage and opined that the SUV was a Cadillac Escalade, made between 2002 and 2006. According to several witnesses, defendant had access to a Cadillac Escalade owned by his mother; one witness saw him driving it earlier that evening.

From her upper-level flat, above Aljibory's flat, Courtney Daniels testified that she heard two gunshots. Daniels testified that she ran to her bedroom window to see if Aljibory was on the porch; she thought he might know what had happened. Daniels testified that, from the window, she saw defendant walking away from their front door on the walkway, by the driveway. Daniels testified that it was dark outside, but she could see defendant because of a streetlight and a lamp in her apartment; she recognized defendant because she had spoken to him during a barbeque at the flat just three days earlier. At trial, Daniels testified that she was "almost 100 percent positive" of her identification of defendant.

-1-

Daniels recalled asking defendant, "[W]hat was that?" Defendant turned and responded, but Daniels did not hear him. Daniels testified that defendant continued walking toward a dark-colored SUV. She testified that it was like the Cadillac Escalade she saw defendant arrive in at the barbeque, but she was unsure if it was the exact vehicle. Daniels testified that she did not see whether defendant entered the SUV because, when he continued walking, she ran out of her apartment and downstairs. She saw Aljibory's door was open about a foot wide and Aljibory was lying on the floor. She called 911 at 9:44 p.m.

A medical examiner testified that Aljibory died as a result of multiple gunshot wounds and the manner of death was homicide. One gunshot entered the inner surface of the left eye and the other entered the left side of the neck—the bullets recovered were .22 caliber. Aljibory had bruising that the medical examiner opined was most likely from falling after the gunshot wounds and blood pooling. On cross-examination, the medical examiner testified that it was possible, but less likely, that the bruising resulted from a fight. The medical examiner testified that the bullets were deformed; they could have been damaged from contact with Aljibory's skull and it was unlikely they were damaged from contact with a wall or the floor.[1]

Search warrants were executed at defendant's house and a family member's house. A key and key fob for an Escalade, along with .22 caliber long rifle ammunition were recovered, but the SUV itself was never found.

On September 15, 2012, defendant was arrested, in Texas, on a Greyhound bus traveling to Mexico. According to Detective Steven David,[2] in an interview, defendant denied any

---

[1] An evidence technician observed indentations in the wall above the fish tank in Sam's flat, but could not determine how the indentations were caused.

[2] Detective David's preliminary examination testimony was read into the record at trial because he was hospitalized and required surgery for a herniated disc, and the trial court determined that he was unavailable. The testimony included the following exchange:

> *DEFENSE ATTORNEY*: At what point in the interview did Mr. Tomaz ask for an attorney?
>
> *DAVID*: About 1:40 when he asked if he was under arrest and what for when I told him that maybe he better speak to an attorney.
>
> *DEFENSE ATTORNEY*: Okay. So you let him know immediately he was in custody and not going anywhere?
>
> *DAVID*: Correct.
>
> *DEFENSE ATTORNEY*: Okay. And once he indicated to you that he wanted to talk to an attorney what, if anything, did you do?
>
> *DAVID*: The interview ended.

knowledge of a murder in Detroit or Hussain Aljibory and he stated that he did not own or have access to an Escalade, but his mother owned one. Detective David testified that defendant explained that he was riding to Phoenix, Arizona to visit a family friend that he could only identify as Muhammad.

At trial, Gerardo Garza testified that he had been in jail with defendant after his arrest in Texas[3] and defendant admitted to shooting a person following an argument over car parts and a debt. Garza also testified that defendant said, "I don't let nobody f*** me over or my family." Garza recalled that defendant was confident that his family would either pay to get him out of trouble or help him flee, and that defendant explained his mother had previously helped him avoid punishment for beating a person with a hammer at a liquor store.

Defendant was charged with first-degree murder, MCL 750.316, and felony-firearm. The trial court instructed the jury that it could also consider the lesser offense of second-degree murder. Following trial, the trial court noted that there had been threats and comments causing the court to "[r]emove people from both families from the courtroom and from the building. And, I mean, it's just been ridiculous." Trial counsel stated she had "never seen a trial quite like this, Judge, where there's so much animus, so many fights, so many disruptions . . . ." The prosecutor added there had been death threats. The jury ultimately convicted defendant of second-degree murder and felony-firearm.

II

A

First, on appeal, defendant argues that his Sixth Amendment right to confrontation was violated when Detective David's preliminary examination testimony was read into the record and that the trial court should not have merely relied on the prosecutor's assertions, but should have required additional evidence that Detective David was unavailable to testify. We disagree.

Defendant preserved his challenge on constitutional grounds, but did not object to the prosecutor's offer of proof at trial. *Mouzon v Blackwell Ctr*, ___ Mich App ___; ___ NW2d ___ (2014) ("For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court."). This Court reviews de novo the constitutional question and any unpreserved arguments for plain error affecting substantial rights. *People v Gaines*, 306 Mich App 289, 297, 304; 856 NW2d 222, 235 (2014). Whether the prosecution exercised due diligence depends on the facts of each case. *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). This Court reviews the trial court's findings of fact for clear error. *People v Lawton*, 196 Mich App 341, 348; 492 NW2d 810 (1992). A finding is clearly erroneous when the reviewing court is left with a definite and firm conviction that an error occurred. *People v Fawaz*, 299 Mich App 55, 60; 829 NW2d 259 (2012).

---

[3] Sergeant McGinnis reviewed the Dallas jail's tower records and concluded that defendant and Garza overlapped sometime between September 27 and September 29. Detective David also verified that defendant and Garza were in the same cell.

"Both the United States and Michigan constitutions guarantee a criminal defendant the right to confront witnesses against him or her." *People v Garland*, 286 Mich App 1, 10; 777 NW2d 732 (2009). The opportunity to meet one's accuser face-to-face is an important, but not indispensable, element of a defendant's confrontation right. *Maryland v Craig*, 497 US 836, 844; 110 S Ct 3157; 111 L Ed 2d 666 (1990). Face-to-face confrontation "must occasionally give way to considerations of public policy and the necessities of the case." *Id*. at 849 (quotations omitted). Consequently, the "Sixth Amendment bars testimonial statements by a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness." *People v Yost*, 278 Mich App 341, 370; 749 NW2d 753 (2008). Statements made during a preliminary examination are testimonial and implicate the confrontation clause. See *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004).

The rules of evidence also address this right to confront witnesses. Inadmissible hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Pursuant to MRE 804(b)(1), if a witness is "unavailable," a party may avoid the hearsay rule and proffer "[t]estimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." MRE 804(a)(4) provides that unavailability as a witness includes situations in which the declarant "is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity [.]" " 'Infirmity' is defined as 'the quality or state of being infirm; lack of strength.' In turn, 'infirm' is defined as 'feeble or weak in body or health, [especially] because of age.' " *People v Duncan*, 494 Mich 713, 725; 835 NW2d 399, 405-06 (2013), quoting Random House Webster's College Dictionary (1995).

Defendant challenges the determination that Detective David was available because it was based on the prosecutor's assertions and no doctor's note was proffered. Defendant cites no authority for the proposition that more proof than the prosecutor's statements about Detective David's herniated disc and surgery was required. Because defendant has failed to adequately present and discuss his argument, or cite supporting authority, his argument is abandoned. MCR 7.212(C)(7); *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001). Moreover, the prosecutor was precluded by the rules of professional conduct from knowingly making a false statement to the court, MRPC 3.3(a)(1), and defendant has not offered any evidence that the prosecutor's statements on the record regarding Detective David's infirmity were false. Therefore, defendant cannot establish that the trial court's reliance on the prosecutor's statements affected his substantial rights.

In addition, the trial court did not clearly err by concluding that reasonable efforts had been made to obtain Detective David's testimony. A witness is unavailable if he is absent from the hearing and the proponent of his statement has been unable to procure his attendance, notwithstanding the exercise of due diligence. MRE 804(a)(5). Due diligence is the attempt to do everything that is reasonable, not everything that is possible, to obtain the presence of a witness. See *People v Cummings*, 171 Mich App 577, 585; 430 NW2d 790 (1988). The record demonstrates that, although the prosecutor had subpoenaed Detective David and paid for his flight to Michigan, he was hospitalized and scheduled for surgery during trial, and he would

recovering for weeks. This Court is not left with a definite and firm conviction that the trial court erred by determining that Detective David was physically infirm and the prosecutor was not required to take more stringent efforts to procure his testimony during his recovery. *Bean*, 457 Mich at 684; *Fawaz*, 299 Mich App at 60.

Defendant further argues that, if Detective David had been called to testify at trial, he would have been cross-examined regarding many allegedly important facts. The prosecutor presented Detective David's testimony at trial for the same reason that it was offered at the preliminary examination—as evidence that defendant committed the charged offenses. Although the burden of proof at the preliminary examination was lower than that at trial, defendant does not argue that he lacked the opportunity and similar motive to question Detective David during that proceeding. See *People v Meredith*, 459 Mich 62, 67; 586 NW2d 538 (1998) (holding preliminary examination testimony of an unavailable witness was admissible against the defendant under the Confrontation Clause and MRE 804(b)(1)). Because Detective David was unavailable to testify and there was a prior opportunity for cross-examination, defendant's Sixth Amendment right to confrontation was not violated.

B

Next, defendant argues that his constitutional rights were violated when Detective David's preliminary examination testimony was read into the record at trial because, at the preliminary examination, defendant's attorney elicited testimony from Detective David about defendant's post-*Miranda* silence.

> As a general rule, if a person remains silent after being arrested and given *Miranda* warnings, that silence may not be used as evidence against that person. Therefore, in general, prosecutorial references to a defendant's post-arrest, post-*Miranda* silence violate a defendant's due process rights under the Fourteenth Amendment of the United States Constitution. [*People v Shafier*, 483 Mich 205, 212-213, 768 NW2d 305 (2009) (citations omitted).]

But in this case, defendant's argument is waived because trial counsel invited the error by reading the allegedly inappropriate preliminary examination questions into the trial record. See *People v McPherson*, 263 Mich App 124, 139; 687 NW2d 370 (2004) ("Under the doctrine of invited error, a party waives the right to seek appellate review when the party's own conduct directly causes the error.").

Defendant claims, in turn, that trial counsel was ineffective for failing to request that the transcript be redacted to exclude Detective David's reference to defendant's post-*Miranda* silence. We disagree. Because no *Ginther*[4] hearing occurred, our review is for errors apparent on the record. *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008).

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. To demonstrate ineffective assistance, defendant must show: (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that this performance so prejudiced him that he was deprived of a fair trial. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. [*People v Gaines*, 306 Mich App 289, 300; 856 NW2d 222, 233 (2014) (citations and quotation marks omitted).]

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). The defendant "necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

According to the record filed with this Court,[5] at trial, the following exchange from defendant's preliminary hearing was read into the record:

*DEFENSE ATTORNEY:* Okay. Detective, at what point in the -- sorry, it's a bad habit.

At what point in the interview did Mr. Tomaz ask for an attorney?

*DAVID:* About 1:40 when he asked if he was under arrest and what for when I told him that maybe he better speak to an attorney.

*DEFENSE ATTORNEY:* Okay. So you let him know immediately he was in custody and not going anywhere?

DAVID: Correct.

*DEFENSE ATTORNEY:* Okay. And once he indicated to you that he wanted to talk to an attorney what, if anything, did you do?

*DAVID:* The interview ended.

Even assuming, arguendo, that it was objectively unreasonable for trial counsel to fail to object to any reading of the preliminary hearing testimony which did not redact defendant's invocation

---

[5] The prosecution contends that the transcript was redacted to remove any reference to defendant's invocation of his right to remain silent, as evidenced by the attorneys' on-the-record agreement to read only the questions and answers and not the court's rulings or the attorneys' statements. However, defendant supplemented the record prior to oral arguments by providing the preliminary examination transcript excerpt with the exchange at issue. The prosecution has not provided any evidence, by way of affidavit or otherwise, to contradict the transcripts provided to this Court, and therefore, we must accept the trial record as provided.

of his right to silence, defendant cannot show any prejudice arising out of defense counsel's conduct. Detective David's testimony was the only reference to defendant's post-*Miranda* silence. Defendant did not testify and his silence was not used for impeachment. The prosecutor did not reference defendant's silence in her opening statement or closing argument. There was no claim by the prosecutor that defendant's silence was actually evidence of his guilt. The trial court also generally instructed the jury during its final instructions that defendant's silence could not be used against him, and juries are presumed to follow the instructions they are given. *People v Rodgers*, 248 Mich App 702, 717; 645 NW2d 294 (2001) ("Juries are presumed to follow their instructions.").

In addition, there was overwhelming evidence of defendant's guilt. Defendant's cellular phone was used near Aljibory's flat around the time of the shooting and Daniels identified defendant walking away from the flat after the gunshots. Defendant was also observed walking toward a Cadillac Escalade, which he had been known to drive and had been seen driving just hours before the shooting. Defendant exhibited consciousness of guilt by leaving the state shortly after the shooting and he admitted shooting someone to a fellow inmate. Defendant also had access to the same caliber of ammunition recovered from Aljibory's body. In light of the mere isolated reference to defendant's post-*Miranda* silence and the overwhelming evidence presented against defendant at trial, defendant cannot establish that, but for trial counsel's failure to move to redact the preliminary examination transcript, the result of the proceeding would have been different.

C

Defendant also claims that the trial court erred by permitting the admission of other-acts evidence involving the assault by defendant at a liquor store. We disagree. The decision to admit evidence is reviewed for an abuse of discretion. *People v Lane*, ___ Mich App ___; ___ NW2d ___ (2014). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

MRE 404(b)(1) provides in relevant part:

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Evidence of a defendant's other acts or crimes is admissible under the following circumstances: (1) the prosecutor offers the evidence for a proper purpose under MRE 404(b)(1); (2) the evidence satisfies the definition of logical relevance within MRE 401; (3) any unfair prejudice arising from the admission of the evidence does not substantially outweigh its probative value, MRE 403; and (4) on request, the trial court can read the jury a limiting instruction that describes

the proper consideration of the other-acts evidence. *People v Starr*, 457 Mich 490, 496; 577 NW2d 673 (1998); *People v Ackerman*, 257 Mich App 434, 439–440; 669 NW2d 818 (2003).

The prosecutor's notice of intent described the purpose for admitting the liquor store assault under MRE 404(b)(1) was to corroborate Garza's testimony. Although "corroboration" is not specifically listed as a proper purpose under the rule of evidence, it need not be listed because the list is not exhaustive. *People v Sabin*, 463 Mich 43, 56; 614 NW2d 888 (2000). In any event, the rule provides that evidence may be admissible as proof of knowledge. Defendant challenged Garza's testimony, arguing that defendant and Garza were not, in fact, cellmates, defendant did not confess to Garza, and Garza merely testified on the basis of stories he had seen in the media. The fact that defendant told Garza that his family would help him avoid punishment for this murder like it had with the liquor store assault—which was not in the news—was not offered to prove defendant actually committed the assault. Rather, it demonstrated that Garza had knowledge from his conversation with defendant, not just the media. Therefore, the prosecutor offered the evidence for a proper purpose.

Relevant evidence is "evidence that makes the existence of any fact at issue more or less probable." *People v VanderVliet*, 444 Mich 52, 62 n 10; 508 NW2d 114 (1993). Here, the fact that Garza knew information that was not reported in the media made it more probable that defendant spoke to him when they were cellmates. Therefore the trial court did not err by concluding the evidence was relevant.

"All evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible. It is only when the probative value is substantially outweighed by the danger of unfair prejudice that evidence is excluded." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (quotation marks omitted). The danger of unfair prejudice from the liquor store assault was tempered by the fact that the two incidents were so different—one involving a hammer to injure a victim in a public place and the instant case involving the shooting death of an isolated victim. Moreover, the trial court instructed the jury not to use any evidence of other bad acts to determine that defendant was a bad person or had committed crimes. Because the danger of unfair prejudice did not significantly outweigh the probative value of the liquor store assault and the jury was given a cautionary instruction, the trial court did not abuse its discretion by permitting the admission of the evidence.

D

Defendant further claims that the trial court abused its discretion by permitting Sergeant Wellman to testify regarding his lay opinion that the vehicle in the security footage was a Cadillac Escalade with a model year between 2002 and 2006. We disagree.

Under MRE 701, a lay witness's testimony is limited to opinions and inferences that are rationally based on the witness's perception and "helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." A witness cannot provide his own opinions when the jury was equally capable of reaching a conclusion; this would invade the province of the jury. *Freed v Salas*, 286 Mich App 300, 347; 780 NW2d 844, 872 (2009).

Sergeant Wellman's testimony about the vehicle in the security footage was rationally based on his own perceptions. He testified that he viewed each video two to three times before trial. His testimony was also helpful to the determination of a fact in issue. Sergeant Wellman did not invade the province of the jury by identifying defendant or expressing any opinion regarding defendant's guilt. Rather, he identified the make and model of a vehicle on security footage at the time of the shooting. And because the Cadillac Escalade that defendant had been observed driving before the shooting was never recovered, the prosecutor could not offer it to the jury for comparison to the vehicle in the footage. Furthermore, Sergeant Wellman's testimony was based on extensive experience in the commercial auto theft unit and he was able to identify unique characteristics of the vehicle in the footage. Absent the ability to observe defendant's Cadillac Escalade and without Sergeant Wellman's experience, the jury was not equally capable of reaching the same conclusion that Sergeant Wellman reached. *Freed v Salas*, 286 Mich App 300, 347; 780 NW2d 844, 872 (2009). The trial court did not abuse its discretion by admitting Sergeant Wellman's lay testimony regarding the Cadillac Escalade.

E

Defendant also argues that the trial court abused its discretion by denying defendant's request for a jury instruction on voluntary manslaughter. We disagree.

Trial counsel properly preserved this challenge for review by requesting the instruction at trial. *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000).[6] In general, this Court reviews claims of instructional error de novo. *People v Hartuniewicz*, 294 Mich App 237, 242; 816 NW2d 442 (2011). However, a trial court's determination that a specific instruction is inapplicable to the facts of a case is reviewed for an abuse of discretion. *Id*. This Court reviews jury instructions in their entirety, and even if imperfect, the instructions do not require reversal if they fairly presented the issues to be tried and sufficiently protected the defendant's rights. *People v Chapo*, 283 Mich App 360, 373; 770 NW2d 68 (2009).

A trial court must instruct on all relevant issues, defenses, and theories if they are supported by the evidence. *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005).

> Under the Code of Criminal Procedure, when a person is charged with an offense that consists of different degrees, the jury or judge in a trial without a jury may find the defendant guilty of a degree of that offense inferior to that charged in the indictment or information. Generally, a lesser offense is necessarily included when the elements of the lesser offense are subsumed within the elements of the greater offense. A requested instruction on a necessarily included lesser offense should be given if the charged greater offense requires the jury to find a disputed factual element that is not part of the included lesser offense, and a rational view of the evidence would support it. If the trial court does not instruct the jury on a lesser included offense, this Court must review the error for harmless

---

[6] Given our determination that the issue is preserved, we need not address defendant's alternative claim that trial counsel was ineffective for waiving it.

error. To prove that the error is harmful rather than harmless, "a defendant must persuade the reviewing court that it is more probable than not that the error . . . was outcome determinative. An error is deemed 'outcome determinative' if it undermined the reliability of the verdict." "In other words, it is only when there is substantial evidence to support the requested instruction that an appellate court should reverse the conviction." Substantial evidence exists when upon review of the " 'entire cause,' " we determine that the failure to provide the instruction resulted in a miscarriage of justice. [*People v Burks*, ___ Mich App ___; ___ NW2d ___ (2014) (citation omitted).]

Voluntary manslaughter is a necessarily included lesser offense of murder. *Mendoza*, 468 Mich at 540. Thus,

[w]hen a defendant is charged with murder, instructions for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence. To prove voluntary manslaughter, the prosecution must prove that: (1) the defendant killed in the heat of passion; (2) the passion was caused by adequate provocation; and (3) there was no lapse of time during which a reasonable person could have controlled his passions. The degree of provocation required to mitigate a killing from murder to manslaughter is that which causes the defendant to act out of passion rather than reason. In order for the provocation to be adequate it must be that which would cause a reasonable person to lose control. The determination of what is reasonable provocation is a question of fact for the fact-finder. However, where, as a matter of law, no reasonable jury could find that the provocation was adequate, the court may exclude evidence of the provocation. [*People v Tierney*, 266 Mich App 687, 714-715; 703 NW2d 204 (2005) (internal quotation marks, citations, and brackets omitted).]

Defendant has not established that a voluntary manslaughter instruction was supported by a rational view of the evidence. The only evidence of a confrontation between defendant and Aljibory before Aljibory was killed was Garza's testimony that defendant told Garza that he and Aljibory got into an argument. Words alone are usually insufficient to constitute adequate provocation. *People v Pouncey*, 437 Mich 382, 391; 471 NW2d 346 (1991).

The medical examiner testified that the bullets were deformed. Defendant maintains that Aljibory's bruising, the deformity, and the unidentified indentations in the wall in Aljibory's flat could lead to an inference that Aljibory and defendant had a physical fight, but the medical examiner testified this scenario was very unlikely and the damage to the bullets likely occurred after hitting Aljibory's body. Similarly, although the medical examiner testified that Aljibory's bruising could have resulted from a fight, he testified that it was most likely pooling from the gunshot wounds. Even if this evidence would have permitted the jury to find that the victim's death was preceded by some sort of confrontation or fight, there was no evidence regarding the circumstances surrounding the encounter, including whether any altercation was primarily verbal or physical, whether any words were exchanged and if so what was said, or whether Aljibory said or did anything that would have caused a reasonable person to lose control. Additionally, there was no evidence describing defendant's emotional state during any encounter with Aljibory. Without such evidence, there was no rational basis for the jury to find that defendant

-10-

killed the victim in the heat of passion caused by adequate provocation. For these reasons, the trial court did not abuse its discretion by denying defendant's request for an instruction on voluntary manslaughter.

F

Defendant further argues that he was denied the right to a public trial. We disagree.

Again, to preserve a claim of error for appellate review, a defendant must generally make a timely assertion of the right before the trial court. *People v Vaughn*, 491 Mich 642, 653-654; 821 NW2d 288 (2012). Defendant did not assert, on the record in the trial court, his right to a public trial. Therefore, this issue is forfeited. As a result, "in order to receive relief on his forfeited claim of constitutional error, defendant must establish (1) that the error occurred, (2) that the error was 'plain,' (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 664-665, citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).[7]

The right to a public trial is guaranteed by the Sixth Amendment of the United States Constitution and Article I, § 20 of the Michigan Constitution. *Vaughn*, 491 Mich at 650. Although the right is not absolute and may be limited, *id*. at 653, to facilitate appellate review of whether the trial court's decision to close the courtroom was proper, a trial court must state the interest that justified the closure and articulate specific findings that explain why that interest justified the closure. *People v Kline*, 197 Mich App 165, 169; 494 NW2d 756 (1992). Further, the closure must be no broader than needed to protect the interest justifying it, that is, it must be "narrowly tailored" to satisfy the purpose for which closure was ordered. *Id*. at 169, 171. This Court distinguished partial closures from full closures of courtrooms to the public. *Id*. at 169-170. "[T]he effect of a partial closure of trial does not reach the level of a total closure and only a substantial, rather than compelling reason for the closure is required." *People v Russell*, 297 Mich App 707, 720; 825 NW2d 623 (2012), citing *Kline*, 197 Mich App at 170.

The record demonstrates that the courtroom was partially closed to the families of both defendant and the victim at the end of trial. Therefore, a substantial reason for the closure was required. The trial court justified the closure on the basis of safety concerns. The record demonstrates that there had been altercations and death threats among the family members. Even defendant's trial counsel acknowledged "ridiculous" and unprecedented behaviors by spectators from both families. The closure to family members was also narrowly tailored to exclude only those spectators who posed a threat. *Kline*, 197 Mich App at 169, 171. Therefore, defendant cannot establish plain error with respect to the partial closure of the courtroom.

---

[7] To the extent that defendant argues that plain error review is inappropriate, this Court is bound by the holding in *Vaughn*. *Allard v Allard*, ___ Mich App ___; ___ NW2d ___ (2014) (Docket No. 308194).

G

Next, defendant argues that the cumulative effect of the errors alleged on appeal requires reversal. We disagree.

"The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *People v Brown*, 279 Mich App 116, 146; 755 NW2d 664 (2008). "[O]nly 'actual errors' are aggregated when reviewing a cumulative-error argument." *People v Gaines*, 306 Mich App 289, 310; 856 NW2d 222 (2014). Because defendant has failed to establish that more than one challenge constituted an actual error, there is no error to accumulate in support of a cumulative-error argument.

H

Last, defendant argues that the trial court impermissibly enhanced his sentence based on facts not found by the jury when it scored various offense variables. Defendant contends this was in violation of *Alleyne v United States*, ___ US ___; 133 S Ct 2151, 2155; 186 L Ed 2d 314 (2013). We disagree.

According to *Apprendi v New Jersey*, 530 US 466, 490; 120 S Ct 2348; 147 L Ed 2d 435 (2000), and its progeny, *United States v Booker*, 543 US 220, 244; 125 S Ct 738; 160 L Ed 2d 621 (2005); *Blakely v Washington*, 542 US 296, 311-313; 124 S Ct 2531; 159 L Ed 2d 403 (2004), any fact that increases a defendant's maximum penalty at sentencing must be admitted by a defendant or proven to a jury beyond a reasonable doubt. The United States Supreme Court recently extended this rule to mandatory minimum sentences in *Alleyne*. In that case, the Court found that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Id*. But, the Court indicated that its *Alleyne* decision did not mean that every fact influencing judicial discretion in sentencing must be proven to a jury beyond a reasonable doubt. *Id*. at 2163.

In *People v Herron*, 303 Mich App 392, 403-404; 845 NW2d 533 (2013), this Court declined to apply *Alleyne* to Michigan's indeterminate sentencing scheme. This Court explained that a recommended guidelines range used to establish a minimum sentence in Michigan differs from a mandatory minimum sentence as discussed in *Alleyne*. *Id*. Thus, Michigan's scheme falls within the broad discretion traditionally afforded to trial courts "to establish a minimum sentence within a range authorized by law as determined by a jury verdict or a defendant's plea" as opposed to judicial fact-finding used to increase a mandatory minimum floor. *Id*. at 405. Thus,

defendant's argument has been foreclosed by *Herron*.[8]

Affirmed.

/s/ Michael J. Kelly
/s/ Kurtis T. Wilder
/s/ Kirsten Frank Kelly

---

[8] An appeal in *Herron* was held in abeyance pending the Michigan Supreme Court's decision in *People v Lockridge*, 496 Mich 852; 846 NW2d 925 (2014). See *People v Herron*, ___ Mich ___; 846 NW2d 924 (2014). However, "[t]he filing of an application for leave to appeal to the Supreme Court or a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals." MCR 7.215(C).