## PEOPLE v CUMMINGS

Docket No. 98239. Submitted February 11, 1988, at Detroit. Decided
    September 19, 1988.

Terrance Cummings was convicted of two counts of first-degree
    criminal sexual conduct following a jury trial in Detroit Re-
    corder's Court, Geraldine B. Ford, J., and was sentenced to life
    in prison. Defendant appealed.

The Court of Appeals *held:*

1. The trial court did not err in giving Criminal Jury Instruc-
    tion 20:2:09 rather than Criminal Jury Instructions 8:1:03 and
    8:1:06. Taken as a whole, the instructions as given adequately
    informed the jury of the applicable law.

2. Due diligence was not used in attempting to produce a
    missing res gestae witness who was endorsed on the informa-
    tion. The trial court now must assess, at a postremand hearing,
    whether defendant suffered any prejudice by the failure to
    produce the witness. The prosecution shall have thirty days to
    seek relief in a postremand hearing to determine whether
    defendant was prejudiced by nonproduction of the witness. If
    the prosecutor fails to seek a postremand hearing, the convic-
    tion shall be deemed vacated and a new trial ordered.

Remanded.

1. CRIMINAL LAW — JURY INSTRUCTIONS — AIDING AND ABETTING —
    SEX CRIMES.

A trial court's use of a criminal jury instruction on sex crimes
    which applies to aiders and abettors where force or coercion is
    used rather than the criminal jury instructions specifically
    dealing with aiding and abetting was not error where the
    instructions given, taken as a whole, covered the law of aiding
    and abetting as it specifically relates to the crime charged and

### REFERENCES

Am Jur 2d, Criminal Law § 1010.

Am Jur 2d, Trial §§ 247, 604 *et seq.,* 724.

Suffciency of efforts to procure witness' attendance to justify admis-
    sion of his former testimony—State cases. 3 ALR4th 87.

See the Index to Annotations under Prosecuting Attorneys; Wit-
    nesses.

adequately informed the jury of the applicable law (CJI 8:1:03, 8:1:06, 20:2:09).

2. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES — DUE DILIGENCE.

A res gestae witness endorsed by the prosecution must be produced if, through due diligence, production is possible; "due diligence" is the attempt to do everything reasonable, not everything possible, to obtain the presence of res gestae witnesses.

3. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES — DUE DILIGENCE — APPEAL.

A defendant may, without first bringing a posttrial motion, seek a review of a court's ruling on the issue whether due diligence was used in attempting to produce a res gestae witness endorsed in an information.

4. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES.

A defendant is presumed to have been prejudiced by the prosecution's lack of due diligence in producing a res gestae witness unless the prosecution overcomes the presumption.

5. CRIMINAL LAW — RES GESTAE WITNESSES — ENDORSEMENT — PRODUCTION.

A defendant's conviction is to be vacated, subject to the prosecution's right to seek relief in a postremand hearing, where the standard of due diligence in the prosecution's effort to locate and produce a res gestae witness was not met and it was clear that the witness was one who would have to be produced, a diligent attempt would have included serious pretrial efforts to locate and subpoena him, and no serious effort was made sufficiently in advance of trial to allow for the difficulties which occurred.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Brian D. Marzec,* Assistant Prosecuting Attorney, for the people.

*Robert E. Slameka,* for defendant on appeal.

Before: KELLY, P.J., and HOOD and M. WAR-
SHAWSKY,* JJ.

KELLY, P.J. Following a jury trial, defendant was
convicted on September 3, 1986, of two counts of
first-degree criminal sexual conduct, MCL
750.520b; MSA 28.788(2). The sentencing guide-
lines recommended a minimum sentence of 120 to
240 months. On September 22, 1986, defendant·
was sentenced to life in prison.

Complainant lived in one of four flats on Buena
Vista in the City of Detroit with her three sons on
May 15, 1986. On that date she let two men enter
her flat, Danny (later identified as Dartanian Cum-
mings, defendant's brother), and Marcus, to use
her phone. After they had left, they called to
complainant from outside the building, saying that
they had left something in her flat. Complainant,
who lived on the first floor, told them that nothing
was left in her apartment.

Complainant testified that Danny then stood
outside the building threatening to blow it up.
Because of this commotion complainant's neigh-
bors came over to her flat. One neighbor was
Norman Siler (also known as Norman Hunter).
Complainant stated that Danny pointed a gun at
this man's head. Eventually Danny and Marcus
left.

Complainant then attempted to fasten the lock
on the front door to the building. The neighbors
apparently had gone home. As she was trying to
lock the door, complainant testified, Marcus and
defendant kicked the door in. The two men then
began to push complainant around and demanded
the object that they claimed had been left in
complainant's apartment when the phone call was
made. The men then kicked, choked, and beat

* Circuit judge, sitting on the Court of Appeals by assignment.

complainant. She testified that defendant tore off her blouse and bra and the two men held her and ripped her pants down. Complainant testified that Marcus then viciously abused her sexually while defendant held her shoulders.

Complainant testified that while she was bleeding from the violent sexual assault, defendant took a bat and began to beat her. Defendant told her, "girl you better say somethin, we are going to tear your butt up, tear you up."

Marcus then threatened to harm complainant's eleven-month-old baby, who was present in the apartment. Defendant then began to choke complainant. Later Marcus attempted to force complainant to perform fellatio on him. Complainant testified that this attack lasted from thirty to forty minutes. The police then arrived at the apartment. Complainant was taken by ambulance to the hospital. Upon examination, at 2:00 A.M. on May 16, 1986, Dr. Charles Benson, Chief of Gynecology at Detroit Receiving Hospital, discovered that complainant had a rectovaginal fistula. Dr. Benson explained that a fistula was a communication between two areas, here complainant's rectum and vagina, caused by a hole of approximately two centimeters. The doctor said the injury was consistent with an object being stuck in the vagina.

On appeal defendant first challenges the jury instructions. Specifically, defendant contends the trial court's instruction regarding aiding and abetting was incomplete and therefore erroneous.

In instructing the jury, the trial court included the following statements:

> In this case, to establish the charge of Criminal Sexual Conduct in the First Degree, which is a basic charge as to all of the three counts, to establish this charge of Criminal Sexual Conduct

in the First Degree, the Prosecution must prove each of the following elements beyond a reasonable doubt. First, that the defendant or someone with whom he was acting engaged in a sexual act with the other person. And that the sexual act involved some actual entry by any part of the person's body into the genital opening of another person's body. It is alleged in this case that the sexual act was committed by placing fingers into the complaining witness' vagina and tearing it.

I will talk to you now about the factors necessary where it is charged that the defendant aided and abetted in committing this sexual act. The People would have to prove at the time of the alleged sexual attack that the defendant was aiding or assisting one or more other persons. It is sufficient if the other person either performed any act or if that person gave encouragement which aided in the commission of the crime at the time the defendant or a person with whom he was acting used force or coercion in the commission of the sexual act. The term force or coercion means they actually used physical force by the defendant or by someone with whom he was acting. Any action or threat was sufficient to create a reasonable fear of dangerous consequences. It is sufficient, when persons are charged with having acted together, if the defendant or a person with whom he was acting overcame the complainant through the actual application of physical force or physical violence.

Defendant argues that Criminal Jury Instructions 8:1:03 and 8:1:06 should have been given. CJI 8:1:03 provides:

> (3) Before you may convict, you must be convinced of the following beyond a reasonable doubt:
> (4) First, the crime charged must have been committed either by the defendant or some other person. [However, it is no defense that there has not been a conviction.]

(5) Second, the defendant must have performed acts or given encouragement which aided or assisted the commission of that crime, either before or at the time of the commission of the crime.

(6) Third, the defendant must have intended the commission of the crime charged or have known that the other person intended its commission at the time of giving the aid or encouragement.

Criminal Jury Instruction 8:1:06 provides:

Mere presence, even with knowledge that an offense is planned or is being committed, is insufficient to establish that the defendant aided or assisted in the commission of the crime.

At trial defendant neither requested these instructions on aiding and abetting nor did he object to the instructions given on this point. Therefore, appellate review on this claim is precluded unless manifest injustice would result. *People v Vicuna,* 141 Mich App 486, 492; 367 NW2d 887 (1985).

Although, as defendant points out, there are specific criminal jury instructions on aiding and abetting, included in the criminal jury instructions on sex crimes is CJI 20:2:09, which applies to aiders and abettors where force or coercion is used. That instruction provides:

(4) Second, that before or at the time of the alleged act the defendant was aided or assisted by one or more other persons. It is sufficient if such other person or persons either performed any acts or gave encouragement which aided the commission of the crime.

(5) Third, that the defendant used force or coercion to commit the sexual act. The term "force or coercion" means the use of actual physical force by the defendant, or any action or threat sufficient to create a reasonable fear of dangerous consequences.

(6) It is sufficient force if the defendant overcame the complainant through the actual application of physical force or physical violence.

It is apparent upon comparison of CJI 20:2:09 to what the trial court instructed on aiding and abetting that the trial court was relying on criminal jury instruction 20:2:09. Because this instruction covered the law of aiding and abetting as it specifically related to the crime charged, we find no error in the use of this instruction. We also find that no manifest injustice occurred in the trial court's not giving sua sponte criminal jury instructions 8:1:03 and 8:1:06. Taken as a whole, the instructions as given adequately informed the jury of applicable law.

Defendant also argues that due diligence was not used by the prosecution to produce the res gestae witness, Norman Siler. Defendant contends the trial court abused its discretion in excusing production of this witness.

At trial, Detroit Police Officer Deborah Lee, the officer in charge of this case, testified as to her attempts to subpoena Norman Siler. Lee stated that she looked for the missing witness under the names Norman Siler and Norman Hunter. Lee stated that she was unable to locate and thus unable to serve Siler. Lee testified that after finding out from a neighbor that Siler no longer resided at the Buena Vista address, Lee contacted the telephone company, gas company, morgue, city jail and all area hospitals, to no avail.

Effective July 1, 1986, the res gestae statute was amended. Deleted from MCL 767.40; MSA 28.980 was the requirement that the prosecutor in the information, "indorse thereon the names of the witnesses known to him at the time of filing the same." MCL 767.40a; MSA 28.980(1) was also

amended, being completely revised, to provide in pertinent part:

> (1) The prosecuting attorney shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers.
>
> (2) The prosecuting attorney shall be under a continuing duty to disclose the names of any further res gestae witnesses as they become known.
>
> (3) Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial.
>
> (4) The prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties.

The information charging defendant in this case was dated June 3, 1986, almost a month prior to the effective date of the revised statutes. The missing res gestae witness was endorsed on the information, as was required by the version of MCL 767.40; MSA 28.980 then in effect.

Defendant's trial did not begin until August 18, 1986, some six weeks after the effective date of revised MCL 767.40; MSA 28.980, which deleted the requirement of endorsement. The prosecutor did not comply with the notice provision of the revised MCL 767.40a(3); MSA 28.980(1)(3) and the defense counsel lodged no objection to this deficiency. It is apparent that the prosecutor, defense counsel, and the trial court were all acting as if the old rule of the endorsement requirement of MCL 767.40; MSA 28.980 had not been revised.

The general rule has been that a witness endorsed by the prosecution, whether or not the

witness is a res gestae witness, must be produced. *People v Michael Fuqua,* 146 Mich App 133, 140-141; 379 NW2d 396 (1985). It is the fact of endorsement, regardless of whether or not such endorsement is required, that puts the obligation of production on the prosecutor. *Id.* See also *People v Hearn,* 100 Mich App 749; 300 NW2d 396 (1980), *People v Baines,* 68 Mich App 385; 242 NW2d 784 (1976), *People v Kern,* 6 Mich App 406; 149 NW2d 216 (1967), and *People v Lummis,* 260 Mich 170; 244 NW 438 (1932).

Here, the missing witness was endorsed on the information. In spite of the fact that the requirement to endorse was deleted from the statute prior to defendant's trial, the witness was endorsed and the prosecutor therefore had a duty to produce that witness. However, a prosecutor may be relieved of his duty to produce a res gestae witness by showing that the res gestae witness could not be produced despite an exercise of due diligence. *People v George,* 130 Mich App 174, 178; 342 NW2d 908 (1983). "Due diligence is the attempt to do everything reasonable, not everything possible, to obtain the presence of res gestae witnesses . . . ." *Id.*

Defendant here challenges the trial court's finding of due diligence. This challenge has been properly preserved since, where a defendant challenges a finding of due diligence, "there is no purpose in forcing the defendant first to seek a remedy in a *Robinson* [*People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973)] proceeding. The defendant may seek a review of the court's ruling on the due diligence issue in an appeal without first bringing a post-trial motion." *People v Pearson,* 404 Mich 698, 722; 273 NW2d 856 (1979).

Defendant challenges the finding of due diligence, in part because the search for the missing

witness did not begin until the eve of trial. Officer Lee testified that she did not begin to look for Siler until the last week in August. Trial began on September 2 and concluded on September 8, 1986. Defendant relies on *People v Pearson, id.,* where the police failed to make a timely inquiry as to the whereabouts of a res gestae witness.

The *Pearson* Court found that prior to trial there had been no attempt to subpoena the missing witness or to keep track of the witness' whereabouts between defendant's arrest and trial. The Supreme Court concluded that a diligent attempt would have included serious pretrial efforts to locate and subpoena the missing witness. The *Pearson* Court stated:

> Of particular concern to this Court, however, is that no serious effort was made sufficiently in advance of trial to allow for the difficulties which occurred. Therefore, we agree that the defendant's conviction be vacated, but subject to the prosecution's right to seek relief in a post-remand hearing consistent with the procedures and standards set forth *infra.* [*Id.* at 717.]

Likewise, here a diligent attempt to produce the missing witness would have included serious pretrial efforts to locate the witness. Since due diligence was not used in attempting to produce the missing witness, the trial court must assess, at a postremand hearing, whether defendant suffered any prejudice. "[T]he defendant is presumed prejudiced until the contrary is established." *Id.* at 725.

We remand. The prosecution shall have thirty days to seek relief in a postremand hearing to determine whether defendant was prejudiced by nonproduction of the witness. If the prosecutor

fails to seek a postremand hearing, the conviction shall be deemed vacated and a new trial ordered. *Id.* at 724.

Remanded.