# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 15, 2018

Plaintiff-Appellee,

v

No. 337320
Monroe Circuit Court
LC No. 16-243033-FH

LEONARD RENEE GREGORY,

Defendant-Appellant.

Before: BORRELLO, P.J., and SAWYER and JANSEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of intentionally discharging a firearm at a dwelling, MCL 750.234b(1), intentionally discharging a firearm from a motor vehicle, MCL 750.234a(1)(a), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced, as a second habitual offender, MCL 769.10, to 42 to 180 months' imprisonment for intentionally discharging a firearm at a dwelling, 42 to 180 months' imprisonment for intentionally discharging a weapon from a motor vehicle, and 24 months' imprisonment for felony-firearm, with credit for 153 days served. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This appeal arises out of a drive-by shooting that occurred on August 8, 2016, near 1023 East Third Street in Monroe, Michigan. Around 9:15 a.m., Tiatesha Holliday heard two men arguing outside her home and when she walked outside to investigate the commotion, she witnessed defendant drive past her house in a blue Dodge Dart, but did not see anyone else in the car. Holliday testified that she has known defendant for approximately three years. Also at the time of the shooting, three workers, Thomas Dobrzanski, James Joseph Herkimer, and William Spillers were digging a hole for a water line replacement at the corner of Winchester and East Third Street. All three men observed defendant driving a blue Dodge Dart, and shooting a firearm towards 1023 and 1025 East Third Street, which are adjacent buildings. John Alamo-Cruz, Sr., first heard gunshots while he was sleeping inside his home, located at 1025 East Third Street. At the time of the shooting, Alamo-Cruz, Sr.'s five children, including John Alamo-Cruz, Jr., and two nephews were sleeping inside. Alamo-Cruz, Sr.'s ex-wife, Angelita Alamo-Cruz, was in the bathroom when she heard gunshots. No one was injured.

Officer Ryan Edward Parise arrived at 1023 East Third Street around 9 that morning where he interviewed Alamo-Cruz, Sr. who identified defendant and a man named "Renise or Renette Jackson" as being involved in the shooting. Alamo-Cruz, Sr. also pointed out that Tyron Hudson, Jackson's uncle, was sitting in a parked truck across East Third Street during the shooting. According to Angelita, Jackson recently threatened to "shoot up the house." Officer Parise also attempted to interview Alamo-Cruz, Jr., but was unable to because according to Parise, Alamo-Cruz Jr was "hostile towards him."

When Lieutenant Derek Lindsay, the detective in charge of the case, arrived at 1023 East Third Street, he interviewed Holliday, who identified defendant as the shooter. Angelita informed Lieutenant Lindsay that she believed that Jackson may be related to the shooting because she heard rumors that he was having problems with her family over stolen narcotics. According to Angelita, Alamo-Cruz, Jr. and his friends may have stolen narcotics from Jackson. According to Angelita's testimony, Alamo-Cruz, Jr. stood next to Angelita as she relayed this information to Lieutenant Lindsay.

According to Lieutenant Lindsay, all of the interviews "from the construction workers to Ms. Holliday" confirmed that there "was a subject in a vehicle in the eastbound lanes with a semi-automatic weapon with [his] hand out the window . . . firing rounds." Lieutenant Lindsay also watched a surveillance video from a Town Square Foods on the corner of East Third Street, which showed a blue Dodge Dart slowly driving down the street.

Approximately 10 days after the shooting, defendant called Lieutenant Lindsay to arrange for his arrest. Defendant was arrested on August 18, 2016, and charged with two counts of intentionally discharging a firearm at 1023 East Third and 1025 East Third Street, MCL 750.234b(1), intentionally discharging a weapon from a motor vehicle, MCL 750.234a(1)(a), and felony-firearm, MCL 750.227b. Relevant to this appeal, the prosecution filed a Trial Witness and Exhibit List, which included Alamo-Cruz, Jr. as a witness. However, at the close of the prosecution's case, defense counsel objected to the prosecution's failure to produce Alamo-Cruz, Jr. as a witness, arguing that his testimony was essential to show that someone else was the shooter. Defense counsel also noted that he did not subpoena Alamo-Cruz, Jr. because the prosecution included him on the witness list.

On the second day of trial, defense counsel requested an evidentiary hearing to determine if the prosecution exercised due diligence in producing Alamo-Cruz, Jr. The trial court granted defense counsel's request, and held an evidentiary hearing before closing arguments. According to Lieutenant Lindsay, the police made five separate attempts to serve Alamo-Cruz, Jr. at 1025 East Third Street between mid-November and the beginning of trial. Lieutenant Lindsay did not testify as to what happened when the police attempted to serve Alamo Cruz, Jr., although the police knew the address of Alamo-Cruz, Jr.'s mother, the police did not attempt to serve him at that address. Lieutenant Lindsay was not aware of any current outstanding warrants for Alamo-Cruz, Jr., and did not believe that he was in the Monroe County Jail at that time. In fact, Lieutenant Lindsay testified that he did not know where Alamo-Cruz, Jr. could be found at that time. Additionally, Lieutenant Lindsay did not testify as to whether the police asked the family where Alamo-Cruz, Jr. could be, and also even though Lieutenant Lindsay believed that his confidential informants were familiar with Alamo-Cruz, Jr., he did not try to discover Alamo-Cruz, Jr.'s whereabouts through them. Following Lieutenant Lindsay's testimony, the trial court

concluded that because the prosecution attempted to serve Alamo-Cruz, Jr. five times, it had exercised due diligence. Additionally, the trial court concluded that even if the prosecution had not exercised due diligence, there was no evidence to suggest that Alamo-Cruz, Jr. would say anything of importance to the defense. Therefore, the trial court found that a missing witness instruction was not appropriate. Defendant was convicted and sentenced as indicated above. This appeal then ensued.

## II. ANALYSIS

### A. Failure to Give Jury Instruction.

On appeal, defendant first argues that he is entitled to a new trial because the trial court abused its discretion by determining that the prosecution exercised due diligence in attempting to produce John Alamo-Cruz, Jr. as a witness for trial, and by failing to give a missing witness instruction.

This Court reviews a trial court's determination as to whether the prosecution exercised due diligence in producing an endorsed witness at trial and the applicability of a missing witness instruction for an abuse of discretion. *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014).

Under MCL 767.40a(3), the prosecution is required to send to the "defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial." Once a witness is endorsed under MCL 767.40a, the prosecution must exercise due diligence in producing that witness for trial. *Eccles*, 260 Mich App at 388. The prosecution's failure to secure an endorsed witness's presence at trial may be excused upon a showing of due diligence. *Id*. Due diligence is established by the prosecution's "attempt to do everything reasonable, not everything possible, to obtain the presence of a witness." *Id*. at 391, quoting *People v Cummings*, 171 Mich App 577, 585; 430 NW2d 790 (1988). An inquiry into reasonableness asks "whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *People v James (After Remand)*, 192 Mich App 568, 571; 481 NW2d 715 (1992).

In *Eccles*, this Court determined that the trial court did not abuse its discretion in determining that the prosecution exercised due diligence in attempting to produce a witness for trial. *Eccles*, 260 Mich App at 389-390. The police officer in charge of the case interviewed several people at the home of the witness's mother, and attempted several times to serve the witness with a subpoena. *Id*. at 389. When the witness failed to appear at trial, the officer checked local jails, hospitals, and morgues. *Id*. at 390. The officer also contacted the police department of the city in which the witness was believed to be living. *Id*. Although the officer did not check with the United States Postal Service or with any federal agencies despite knowing that the witness was an informant for a local drug agent, this Court determined due diligence was exercised because the police did everything reasonable to locate the witness. *Id*. at 390-391.

In *People v Bean*, 457 Mich 677, 685-689; 580 NW2d 390 (1998), our Supreme Court found that the prosecution failed to exercise due diligence where police efforts were mostly

limited to a few phone calls in the weeks preceding the trial and visiting an abandoned building that supposedly belonged to the witness's aunt. The prosecution never attempted to contact local social service agencies, the United States Postal Service, or the Michigan Department of Corrections. *Id*. at 687. Even after learning that the witness had most likely moved to Washington, D.C., no efforts were made to locate him there. *Id*. at 685-688. For these reasons, the Michigan Supreme Court found that the prosecution did not exercise due diligence. *Id*. at 690.

Here, Alamo-Cruz, Jr. was an endorsed witness, and therefore, the prosecution had a duty to produce him at trial. *Eccles*, 260 Mich App at 388. While this is not a case in which the prosecution did nothing in attempting to locate Alamo-Cruz, Jr., we cannot conclude on this record that the prosecutor exercised due diligence. See *Bean*, 457 Mich at 689. Due diligence considers both the efforts expended and the timing of those efforts. *James*, 192 Mich App at 571. In *James*, the prosecution's failure to maintain contact with a witness for 3½ years between the preliminary examination and the beginning of trial, and the mere mailing of a subpoena to the witness three weeks before trial was not due diligence. *Id*. at 571-572. Although the prosecution was aware that trial was scheduled for December 5, 2016, Lieutenant Lindsay testified that attempts to locate Alamo-Cruz, Jr. did not begin until "roughly the middle of November." The extent of the prosecution's efforts in attempting to produce Alamo-Cruz, Jr. at trial was five unsuccessful attempts to serve him, all at the same address. In contrast to *Eccles*, there was no attempt to speak with Alamo-Cruz, Jr.'s relatives or friends to learn of his whereabouts, and Lieutenant Lindsay limited his search to only one local county jail.

Similar to the lackluster attempts undertaken in *Bean*, here, Lieutenant Lindsay did not take any steps to learn of an alternative address where Alamo-Cruz, Jr. could be located, but simply returned several times to an address that did not prove helpful. See *Bean*, 457 Mich at 689. The prosecution argues that law enforcement was not aware of any other addresses where Alamo-Cruz, Jr. was likely to be living. However, Lieutenant Lindsay testified that although police officers knew where Alamo-Cruz, Jr.'s mother lived; there was no attempt to serve him there. Even though Alamo-Cruz, Jr.'s mother was a witness in this case, Lieutenant Lindsay did not even attempt to call her to ask if Alamo-Cruz, Jr. may be staying at her home. Lieutenant Lindsay did not testify as to any efforts taken after the attempts to serve Alamo-Cruz, Jr. at his house were unsuccessful. There is also no evidence that the police spoke with family members or neighbors to learn of Alamo-Cruz, Jr.'s whereabouts. Hence, based on these findings, we hold this case analogous to the facts presented to our Supreme Court in *Bean*. As a consequence, the trial court abused its discretion when it determined that the prosecution exercised due diligence.

We note that our holding that the prosecution failed to exercised due diligence in this case does not end our inquiry. If the trial court determines that the prosecution failed to exercise due diligence, then it *may* give a missing witness instruction, explaining that the "jury may infer [that] the witness's testimony would have been favorable to the defense." *Duenaz*, 306 Mich App at 104 (emphasis added). A missing witness instruction as a remedy to a MCL 767.40a violation is sometimes, but not always, appropriate. *People v Perez*, 469 Mich 415, 420; 670 NW2d 655 (2003). Whether such an instruction is warranted depends "on the specific facts of th[e] case." *Id*. at 420-421. In denying defendant's request for a missing witness instruction with respect to Alamo-Cruz, Jr., the trial court determined that the prosecution exercised due diligence, and thus, the missing witness instruction was unnecessary. However, because the

-4-

prosecution did not exercise due diligence, it is necessary to determine whether a missing witness instruction would have been appropriate.

This Court reviews jury instructions in their entirety to determine whether error requires reversal. *People v McKinney*, 258 Mich App 157, 162; 670 NW2d 254 (2003). A trial court's determination as to whether a jury instruction is applicable "lies within the sound discretion of the trial court." *Id.*, quoting *People v Ho*, 231 Mich App 178, 189; 585 NW2d 357 (1998). The trial court must grant a request for a jury instruction on a theory or defense if it is supported by the evidence." *McKinney*, 258 Mich App at 162-163. However, if the trial court fails to give an applicable jury instruction, the defendant bears the burden of establishing that such failure resulted in a miscarriage of justice. MCL 769.26; *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). Unless, after reviewing the "nature of the error in light of the weight and strength of the untainted evidence, it affirmatively appears that it is more probable than not that the error was outcome determinative," the defendant's conviction will not be reversed. *Riddle*, 467 Mich at 124-125. Thus, reversal for the trial court's failure to give a missing witness instruction is unwarranted unless "it is more probable than not that the error was outcome determinative." See *McKinney*, 258 Mich App at 163.

Defendant contends that the presence of Alamo-Cruz, Jr. was essential "to show that possibly a different person was involved in th[e] shooting." However, defendant did not present any witnesses to corroborate this theory of defense, and relies primarily on hearsay statements concerning rumors in the neighborhood. Defendant did not proffer any evidence that anyone else besides defendant was present and armed with a weapon. Simply, stated, defendant did not support his request for a missing witness instruction with evidence to support his theory that there was a different shooter. See *McKinney*, 258 Mich App at 162-163. As noted in *McKinney*, a defendant's request for a jury instruction must be granted if supported by the evidence. *Id.* Here, where there was no evidence presented to support defendant's request, we are precluded from finding that the failure to give the missing witness instruction was outcome determinative. See *McKinney*, 258 Mich App at 163. Because any error resulting from the trial court's failure to give a missing witness instruction as a result of its erroneous ruling that the prosecution had exercised due diligence was not outcome determinative, reversal of defendant's conviction is unwarranted. See *id*. Accordingly, defendant is not entitled to relief on this issue.

B. Sentencing.

Next, defendant argues that he is entitled to resentencing because the trial court incorrectly assessed 10 points for offense variable (OV) 4 (psychological impact) and 25 points for OV 9 (number of victims). To preserve a challenge to a defendant's OV score, the defendant must raise "the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed" with this Court. MCL 769.34(10). Defendant challenged the trial court's scoring of OV 4 at sentencing, and the trial court heard and decided the challenge against him. Further, by court rule, when a defendant raises a sentencing issue, the defendant must provide a copy of the Presentence Investigation Report (PSIR), which was done here. MCR 7.212(C)(7). Therefore, defendant preserved his challenge to his OV 4 scoring for appellate review.

This Court reviews a sentencing court's factual findings for clear error, which must be supported by a preponderance of the evidence. *People v Gloster*, 499 Mich 199, 204; 880 NW2d

776 (2016). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation," which this Court reviews de novo. *Id.*, quoting *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Clear error exists if this Court is "left with a definite and firm conviction that a mistake has been made." *People v Stone*, 269 Mich App 240, 242; 712 NW2d 165 (2005).

Defendant did not preserve his challenge to his OV 9 score. At sentencing, defendant requested that any reference to the Alamo-Cruz family as victims be removed from the PSIR. Although the prosecution interpreted defendant's request as a challenge to his OV 9 score, the trial court explicitly clarified that defendant was only arguing that the PSIR should not reference the Alamo-Cruz family as victims to which defendant agreed. There was no further discussion concerning OV 9. Defendant did not file a motion for resentencing or a motion to remand.

This Court reviews unpreserved challenges to a defendant's sentence under the plain error standard set forth in *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004). Under the plain error standard, the defendant must satisfy three requirements: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected substantial rights." *Carines*, 460 Mich at 763. The third prong requires that the defendant establish prejudice in that the error affected the outcome of the lower court proceedings. *People v Borgne*, 483 Mich 178, 196-197; 768 NW2d 290 (2009). Even if all three requirements are met, reversal is only warranted when the plain, forfeited error resulted in an innocent defendant's conviction, or it "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Carines*, 460 Mich at 763-764, quoting *United States v Olano*, 507 US 725, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993).

i. MCL 777.34 (OV 4)

Defendant argues that he is entitled to resentencing because the trial court improperly assessed 10 points for OV 4. OV 4 considers the psychological injury to a victim. MCL 777.34(1). Defendant was assessed 10 points for OV 4, which is appropriate if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). An assessment of 10 points for OV 4 is appropriate if the victim suffered "personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). The fact that the victim did not seek treatment is not conclusive, MCL 777.34(2), and a trial court's observations of the victim's demeanor at trial can support a finding of psychological injury, *People v Schrauben*, 314 Mich App 181, 197; 886 NW2d 173 (2016). However, "points may not be assessed solely on the basis of a trial court's conclusion that a 'serious psychological injury' would normally occur as a result of the crime perpetrated against the victim." *People v White*, 501 Mich 160, 162; 905 NW2d 228 (2017). In *White*, the trial court assessed 10 points for OV 4 even though the only evidence that the victim suffered a psychological injury was her fear while the crime was being committed. *Id.* at 162-163. The Supreme Court ruled that the trial court erred by assessing 10 points for OV 4 because the victim's "fear while a crime is being committed, by itself, is insufficient to assess points for OV 4." *Id.*

The trial court's only justification for assessing 10 points for OV 4 was because Holliday, "was upset." At trial, Holliday testified that she was "kind of shaken up and irritated." However, she did not provide any testimony that she suffered more than a general fear during the shooting. Standing alone, this is insufficient to support as assessment of 10 points for OV 4. See *White*, 501 Mich at 162-163. Therefore, the trial court clearly erred by assessing 10 points for OV 4 because the evidence does not support a finding that Holliday or anyone else suffered a psychological injury as a result of defendant's crimes.

## ii. MCL 777.39(1) (OV 9)

Defendant next argues that the trial court incorrectly assessed 25 points for OV 9. The substance of defendant's argument is that because there were less than 10 victims in this case, the trial court should have assessed OV 9 at 10 points.

OV 9 considers the number of victims. MCL 777.39. In pertinent part, MCL 777.39(1) provides:

> (1) offense variable 9 is number of victims. Score offense variable 9 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> * * *
>
> (b) there were ten or more victims who were placed in danger of physical injury or death, or twenty or more victims who were placed in danger of property loss ................................................................................. 25
>
> (c) there were two to nine victims who were placed in danger of physical injury or death, or four to nineteen victims who were placed in danger of property loss ................................................................................. 10
>
> (d) there were fewer than two victims who were placed in danger of physical injury or death, or fewer than four victims who were placed in danger of property loss ................................................................................. 0

When scoring OV 9, each individual "who was placed in danger of physical injury or loss of life is considered a victim." A person may be considered a victim "even if he or she did not suffer actual harm; a close proximity to a physically threatening situation may suffice." *People v Gratsch*, 299 Mich App 604, 624; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013). However, a victim must be a direct victim of the crime, rather than a member of the community that was indirectly affected by the commission of the crime. *People v Carrigan*, 297 Mich App 513, 151-516; 824 NW2d 283 (2012).

In *People v Walden*, 319 Mich App 344, 348-350; 901 NW2d 142 (2017), the defendant drew a knife and swung it around himself for protection during a gambling altercation. This Court upheld the trial court's assessment of 10 points for OV 9 even though only one person was actually injured because "at least two other people were placed in immediate danger of physical

injury or loss of life," and therefore, constituted victims within meaning of OV 9. *Id*. at 350. Here, defendant does not dispute that Holliday and her two children constitute victims for the purposes of scoring OV 9. Rather, defendant argues that the nine members of the Alamo-Cruz family cannot be considered victims under OV 9 because defendant was found not guilty of discharging a firearm at their home address. However, "the standard of proof applicable to the guidelines scoring process differs from the reasonable doubt standard underlying conviction of an offense." *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). The trial court uses the preponderance of the evidence standard to determine the sentencing variables. *Id*. Therefore, it is irrelevant that the trial court struck any reference to Alamo-Cruz family as victims from the PSIR. Defendant may have been found not guilty of intentionally discharging a firearm at 1025 East Third Street, but a preponderance of the evidence supports a finding that defendant placed the Alamo-Cruz family in danger of physical injury or loss of life. See *id*.

The prosecution correctly argues that because defendant shot approximately seven bullets in a crowded residential neighborhood, hitting two houses within observation of three construction workers, defendant placed 10 or more people in danger of physical injury or death. In *People v Morson*, 471 Mich 248, 261-262; 685 NW2d 203 (2004), our Supreme Court determined that an assessment of 10 points for OV 9 was appropriate because the defendant placed two people in danger of injury or loss of life—one person who was actually robbed, and another who was standing nearby and responded to the first victim's call for help during an armed robbery. *Morson*, 471 Mich at 262-263. Here, each member of the Alamo-Cruz family constitutes a victim for the purposes of OV 9 because defendant put them in immediate danger of injury or loss of life. See *id*. at 349-350. Defendant fired a gun in the direction of their home when all nine family members were inside. A bullet was found in front of the Alamo-Cruz's cement porch, and a bullet was found lodged in Holliday's door frame. Accordingly, the trial did not plainly err when it assessed 25 points for OV 9 because the facts in this case support the trial court's determination that 10 or more victims were placed in danger of physical injury or loss of life.

### iii. Resentencing

"Resentencing is an appropriate remedy where a defendant's sentence is based on an inaccurate calculation of the sentencing guidelines range, and therefore, does not conform to the law." *People v Underwood*, 278 Mich App 334, 337; 750 NW2d 612 (2008). However, "[w]here a scoring error does not alter the appropriate guidelines range, resentencing is not required." *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). In this case, there was a scoring error, but the scoring error did not alter the appropriate guidelines range. Rescoring of the guidelines to reflect an assessment of zero points for OV 4 would result in the same recommendation under the guidelines, which is 29 to 71 months. See *People v Davis*, 468 Mich 77, 83; 658 NW2d 800 (2003). Therefore, defendant is not entitled to resentencing.

Affirmed.

/s/ Stephen L. Borrello
/s/ David H. Sawyer
/s/ Kathleen Jansen