*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 30, 2020

Plaintiff-Appellee,

v

No. 345793
Wayne Circuit Court

MICHAEL DELON FOY,

LC No. 17-008492-01-FC

Defendant-Appellant.

Before: M. J. KELLY, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Defendant, Michael Foy, appeals as of right his jury trial convictions of second-degree murder, MCL 750.317,[1] felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, third offense (felony-firearm), MCL 750.227b. The trial court sentenced Foy as a fourth-offense habitual offender, MCL 769.12, to prison terms of 60 to 100 years for the second-degree murder conviction and 10 to 20 years for the felon-in-possession conviction, to be served concurrently, and a consecutive 10-year term of imprisonment for the felony-firearm conviction. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

On July 15, 2017, Foy shot and killed Raymond Whatley outside an after-hours club in Detroit. Whatley was a co-owner of the club. Before the shooting, Whatley and Foy got into an argument and physical altercation. Witnesses heard each man claim he was going to leave and return with a gun. Whatley returned with a shotgun. According to witnesses, he held the shotgun at his side while locking up the after-hours club. Foy also returned to the club. Witnesses testified to hearing handgun shots, followed by a blast from a shotgun. It is undisputed that Whatley was shot eight times. Three of the shots entered his body from behind, and the other five entered his body from the front. Although no one directly saw Foy shooting Whatley, they identified him as being in the area and Foy admitted that he shot Whatley. Foy even admitted shooting Whatley in

---

[1] The jury acquitted Foy of a first-degree premeditated murder charge, MCL 750.316(1)(a).

the back and to shooting Whatley after he had fallen to the ground. At trial, Foy testified that he only shot Whatley in self-defense. The jury, however, convicted him as indicated above. This appeal follows.

## II. EXCLUSION OF EVIDENCE

### A. STANDARD OF REVIEW

Foy argues that the trial court erred by granting the prosecutor's motion in limine to preclude him from presenting expert testimony regarding his post-traumatic stress disorder (PTSD) in support of his claim of self-defense. A trial court's decision to exclude evidence is reviewed for an abuse of discretion. *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014). An abuse of discretion occurs when the court chooses an outcome that falls outside the range of principled outcomes. *Id*. Foy argues that the exclusion of this evidence deprived him of his constitutional right to present a defense. We review constitutional issues de novo. *People v Bosca*, 310 Mich App 1, 47; 871 NW2d 307 (2015), lv app held in abeyance 911 NW2d 465 (2018).

### B. ANALYSIS

Before trial, the court appointed Dr. Gerald Shiener to evaluate Foy, who claimed that he suffered from PTSD because he was the victim of a prior shooting that left him with brain damage and partial paralysis. Dr. Shiener concluded that at the time of the shooting Foy had a PTSD condition that diminished his capacity to control his impulses, especially when he felt threatened. The prosecutor filed a motion in limine, arguing that this proposed use of the PTSD evidence was inconsistent with *People v Carpenter*, 464 Mich 223, 226; 627 NW2d 276 (2001), in which our Supreme Court eliminated defenses based on diminished capacity short of insanity. The trial court granted the prosecutor's motion. On appeal, Foy argues that he should have been permitted to present this evidence because his history and psychological makeup was relevant to explain the reasonableness of his belief that he was in danger when he shot Whatley.

In *People v Orlewicz*, 293 Mich App 96, 102; 809 NW2d 194 (2011), this Court explained:

> A claim of self-defense at common law required an honest and reasonable belief of an imminent danger of death or great bodily harm. *People v Dupree*, 486 Mich 693, 707-708; 788 NW2d 399 (2010). The Self-Defense Act, MCL 780.971 *et seq*., . . . continues to require an honest and reasonable belief of imminent death or harm. MCL 780.972. A defendant's history and psychological makeup may be relevant to explain the reasonableness of a defendant's belief that he or she was in inescapable danger. *People v Wilson*, 194 Mich App 599, 604; 487 NW2d 822 (1992) (discussing the "battered spouse syndrome"). And reasonableness depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor. *People v Doss*, 406 Mich 90, 102; 276 NW2d 9 (1979) (discussing what constitutes "reasonable force" for a police officer to effectuate an arrest). A defendant's psychological idiosyncrasies may, at least in theory, be relevant to the reasonableness of the defendant's belief that he or she was in danger.

Although Foy correctly recognizes that his state of mind and the circumstances as they appeared to him at the time of the shooting would have been probative of his claim of self-defense, the proposed testimony by Dr. Shiener was not relevant to this purpose. Dr. Shiener's opinion that Foy's PTSD condition limited his ability to control his impulses, especially when he felt threatened, was not probative of Foy's state of mind at the time of the shooting. Dr. Shiener was not otherwise qualified to offer an opinion regarding Foy's actual state of mind or understanding of the circumstances at the time of the shooting. See *Phillips v Wainwright*, 624 F2d 585, 589-590 (CA 5, 1980). While it is possible that Dr. Shiener could have testified generally about PTSD without offering an opinion on Foy's state of mind with regard to self-defense, Foy did not seek to offer his testimony for that purpose.

Furthermore, contrary to what Foy argues, the trial court permitted him to offer testimony of his past circumstances and background as they related to his perception of the circumstances as they appeared to him at the time of the shooting. Foy explained that he feared being shot because he had been a victim of a past shooting. Foy explained that he had been shot twice in the head and suffered from seizures, in addition to being paralyzed on one side. And, although Foy did not reference his PTSD condition, his testimony explained how the prior shooting enhanced his fear of being shot again. He was able to describe how his state of mind was affected by those prior injuries, and he explained that he shot Whatley due to his fear of dying or being shot again.

Any testimony by Dr. Shiener would have been based on information provided by Foy. Because Dr. Shiener was not permitted to opine on Foy's state of mind or whether Foy reasonably feared for his life when he shot the victim, and Foy was otherwise able to testify about his prior injuries and how those injuries impacted his fear of being shot by Whatley, the trial court did not abuse its discretion by excluding Dr. Shiener's testimony and the court did not deprive Foy of his right to present a defense.

## III. RIGHT TO REMAIN SILENT

### A. STANDARD OF REVIEW

Next, Foy argues that the trial court infringed on his constitutional right to remain silent by compelling him to testify in order to receive a jury instruction on self-defense. We review constitutional issues de novo. *Bosca*, 310 Mich App at 47.

### B. ANALYSIS

After the prosecution rested, Foy asked for a self-defense instruction. The trial court ruled that the evidence thus far presented did not support such an instruction. The court remarked:

> So in order to get some evidence of self defense, it's going to have to come from the defendant, I guess, because what I've heard so far presented by the People does not raise any level of the self-defense instruction being given.

Subsequently, Foy was advised on the record that he had a right to testify or not testify, and that the decision was his choice. Foy responded, "I don't have a choice in order to prove my self defense." Thereafter, he testified. On appeal, he argues that by declining to give the self-defense instruction in the absence of his testimony the trial court deprived him of the right to remain silent.

A trial court's determination as to whether a jury instruction is applicable is reviewed for an abuse of discretion. *People v Rajput*, ___ Mich ___, ___; ___ NW2d ___ (2020) (Docket No. 158866); slip op at 3. "If supported by the evidence, defendant's theory of the case must be given." *Id*. Thus, the trial court's jury instructions cannot exclude the theory of self-defense "if there is evidence to support [it]." *Id.* (quotation marks and citation omitted). MCL 780.972(1)(a) sets forth the elements for the use of deadly force in self-defense:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

"A defendant need not take the stand and testify in order to merit an instruction on self-defense." *People v Hoskins*, 403 Mich 95, 100; 267 NW2d 417 (1978). However, a jury instruction on self-defense is not warranted unless the evidence supports it.

Prior to Foy's testimony, the evidence presented showed that Foy and Whatley were previously involved in a verbal confrontation—including evidence that Whatley said he would kill Foy—but it also showed that both men subsequently left the scene. Although there was evidence that Whatley returned to the club with a shotgun, there was no evidence that he confronted or threatened Foy with it. According to witnesses, Whatley appeared to be locking up the club and he only held the gun at his side. There was no evidence that he confronted or pointed the shotgun at Foy before Foy shot him. Without evidence that Whatley confronted or threatened Foy with the shotgun, the trial court was justified in ruling that the evidence did not support an instruction on self-defense before Foy testified. Although Foy may have been reluctant to testify, the trial court did not force or compel him to do so. Accordingly, Foy's claim is without merit.

## IV. MISSING WITNESS

Foy argues that the trial court erred by allowing the preliminary examination testimony of Anthony Foy[2] to be read to the jury after Anthony failed to appear at trial. However, this issue has been waived. Waiver is the intentional relinquishment or abandonment of a known right. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). "A defendant may not waive objection to an issue before the trial court and then raise it as an error on appeal." *Id.* at 214 (quotation marks and citation omitted). Moreover, a defendant's express approval of a course of action extinguishes any error with regard to that action, leaving no error to review. *Id.* at 216. Here, after Anthony failed to appear at trial, the trial court agreed to conduct an evidentiary hearing to determine whether the prosecution had exercised due diligence. However, Foy's lawyer stated that it was not necessary to investigate whether the prosecution had exercised due diligence to produce Anthony for trial, agreed that Anthony's prior testimony could be introduced at trial, and expressly

---

[2] Anthony is Foy's cousin.

declined to have Anthony testify after he was produced. Accordingly, any error related to the introduction of his prior testimony was waived.

## V. JURY INSTRUCTIONS

### A. STANDARD OF REVIEW

Foy argues that the trial court erred by failing to give the missing-witness instruction, M Crim JI 5.12, with respect to the prosecution's failure to produce Antonio Foy[3] as a witness at trial. We review a trial court's decision regarding due diligence to produce a witness and whether a missing-witness instruction is appropriate for an abuse of discretion. *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004).

### B. ANALYSIS

The missing-witness instruction, M Crim JI 5.12, provides that when a witness whose appearance was the responsibility of the prosecution fails to appear at trial, the jury "may infer that [the] witness's testimony would have been unfavorable to the prosecution's case." The instruction is not appropriate if the witness could not be produced despite the exercise of due diligence. *Eccles*, 260 Mich App at 391. "Due diligence is the attempt to do everything reasonable, not everything possible, to obtain the presence of the witness. . . ." *People v Cummings*, 171 Mich App 577, 585; 430 NW2d 790 (1988) (quotation marks and citation omitted). "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998).

In this case, the trial court found that Antonio could not be produced despite the exercise of due diligence. The record supports this finding. Initially, the police spoke to Antonio over the telephone. He assured the police that he would appear at trial. When he did not appear, the police resumed their efforts to locate him. These efforts included going to his home, checking with neighbors, and searching jails, morgues, hospitals, and police databases. Foy's family offered information on Antonio's possible location and the police investigated that information, but that also proved unsuccessful. While it is possible that additional efforts could have been made to detain Antonio earlier, the standard only requires the police to do what is reasonable, not everything that is possible. *Cummings*, 171 Mich App at 585. Accordingly, on this record, the trial court did not abuse its discretion by finding that reasonable efforts were made to produce Antonio for trial, so Foy was not entitled to the missing-witness instruction.

## VI. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

---

[3] Antonio Foy is another of Foy's cousins.

Foy asserts that his trial lawyer was ineffective. Because Foy did not raise an ineffective-assistance claim in the trial court and this Court denied his motion to remand,[4] our review of this issue is limited to errors apparent from the record. See *People v Matuszak,* 263 Mich App 42, 48; 687 NW2d 342 (2004).

## B. ANALYSIS

To establish ineffective assistance, a defendant must show that his lawyer's "performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). "[T]he defendant must overcome the presumption that the challenged action might be considered sound trial strategy." *People v Tommolino,* 187 Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, the defendant must show a reasonable probability that, but for his lawyer's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996). Further, the defendant has the burden of demonstrating factual support for his ineffective-assistance claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Foy argues that his lawyer was ineffective for failing to review photographic evidence with him before trial. According to an affidavit submitted on appeal, Foy was shown pictures at trial that his lawyer had not shared with him before trial. He asserts that if he had seen this evidence before trial, he "would have been able to more fully explain what happened, and [his lawyer] could have presented a clearer picture to the jury." However, Foy's affidavit does not identify which photographs he was unable to see before trial, it does not explain what information he could have provided to his lawyer, and is silent with regard to how he could have better explained what happened if his lawyer had reviewed the photos with him before trial. Further, the record does not support his claim that he was confronted with evidence at trial that he did not have an opportunity to review beforehand. When his lawyer questioned Foy, the only photographic evidence referenced were stills from the video recordings of the shooting. Similarly, the only photographic evidence used to question Foy during cross-examination were still photographs from the video recordings. Although it is unclear whether Foy had an opportunity to review the still photographs before trial, the images were obtained from the video, which Foy watched "a bunch of times." Foy was also shown a sketch of the scene, including where shell casings were found. Although Foy questioned the prosecutor's interpretation of some of the evidence, he never expressed surprise and he testified that he had seen the discovery in the case. In sum, the record does not support Foy's claim that his lawyer was unprepared to address the photographic evidence.

Foy next argues that his lawyer was ineffective for agreeing that the prosecution had exercised due diligence to produce Anthony as a witness and for conceding that Anthony's prior preliminary examination testimony could be read to the jury. Although Foy faults his lawyer for conceding that diligent efforts were made to locate and produce Anthony at trial, he has not provided any basis for concluding that the prosecution failed to exercise due diligence in attempting to secure Anthony's presence. Similarly, although Foy argues that the introduction of

---

[4] *People v Michael Foy*, unpublished order of the Court of Appeals, issued May 30, 2019 (Docket No. 345793).

Anthony's prior testimony violated his right of confrontation, he does not dispute that he had an opportunity to confront and cross-examine Anthony at the preliminary examination. More significantly, Foy cannot establish that he was prejudiced by his lawyer's concessions because Anthony was later produced, and Foy was afforded an opportunity to have Anthony testify. Foy's lawyer declined to do so; that decision was a matter of trial strategy, *People v Davis,* 250 Mich App 357, 368; 649 NW2d 94 (2002), and Foy has not provided any basis for overcoming the presumption of sound strategy.

## VII. SENTENCING

Foy argues that his sentence for second-degree murder is unreasonable and disproportionate, particularly because he is also subject to a mandatory 10-year term of imprisonment for his felony-firearm conviction. Foy contends that the trial court failed to consider mitigating factors, including that he was disabled and was exposed to drugs, violence, and neglect when he was a child. However, the trial court was aware of these factors. The court acknowledged Foy's partial paralysis, which was the result of Foy being shot six times in 2013. The court was also aware that Foy suffered from PTSD as a result of the 2013 shooting. In addition, the court referred to of the trauma Foy experienced as a child. The court noted that Foy's mother did not raise him and that she had a substance-abuse problem. Foy's lawyer further highlighted and emphasized Foy's early history in his mother's care, advising the court that when Foy was 12 years old, a man assaulted his mother, Foy intervened, and the man threatened Foy with a gun. Based on the foregoing, it is apparent that the trial court was aware of Foy's difficult childhood and that it considered the mitigating factors when fashioning Foy's sentence.

"[T]his Court is required to review for reasonableness only those sentences that depart from the range recommended by the statutory guidelines." *People v Anderson*, 322 Mich App 622, 636; 912 NW2d 607 (2018). A sentence that falls within the sentencing guidelines must be affirmed unless there was an error in the scoring of the guidelines or the trial court relied on inaccurate information. *Id.*, citing MCL 769.34(10). Foy's sentence was within the guidelines range, and on appeal, he has not asserted that the guidelines were erroneously scored or that the court relied on inaccurate information when imposing the 60 to 100 year sentence. As a result, we must affirm his sentence. See *id.*

Affirmed.

/s/ Michael J. Kelly
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto

-7-