*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTHONY LAMONT-DSHAWN BROWN,

        Defendant-Appellant.

FOR PUBLICATION
May 2, 2024
9:00 a.m.

No. 359376
Eaton Circuit Court
LC No. 2020-020080-FC

Before: LETICA, P.J., and N. P. HOOD and MALDONADO, JJ.

LETICA, P.J.

Following a jury trial, defendant was convicted of first-degree murder, MCL 750.316(1)(a) (premeditated murder) and (b) (murder during commission of a felony), and possession of a firearm during commission of a felony (felony-firearm), MCL 750.227b(1). He was sentenced to life imprisonment for the first-degree murder conviction and a consecutive term of two years' imprisonment for the felony-firearm conviction. Defendant appeals as of right, and we affirm.

## I. FACTUAL BACKGROUND

The victim was murdered after defendant and three others engaged in a ruse designed to convince the victim that they had arrived at his apartment to play a game of dice. Defendant and the victim exchanged messages about how defendant had found "easy pros" and was trying to "pay [the victim] back" and "make some money too." In light of these exchanges, the victim gave defendant his address. Defendant, his then 15-year-old codefendant, WF, and Neal Prince[1] were permitted to enter the victim's apartment. However, the men left when the victim indicated that he did not have any dice.

---

[1] For his role in the murder, WF entered into a plea agreement and was sentenced to a term of years. Prince was also convicted and his convictions were affirmed on appeal. See *People v Prince*, unpublished per curiam opinion of the Court of Appeals, issued February 1, 2022 (Docket No. 352799).

According to WF, defendant and the others left the victim's apartment and conferred in the parking lot. After discussing their strategy, defendant, WF, and Prince returned to the victim's apartment and were allowed to enter. Once in the apartment, WF shot the victim in the back, and defendant then shot the victim in the head twice. Unbeknownst to the murderers, the victim's roommate had a computer set up in the bedroom that recorded by motion sensor. Accordingly, the perpetrators were captured on video ransacking the bedroom in a series of video clips. Specific items stolen from the victim's apartment, including a backpack, foam shoes, and a cross pendant, as well as distinctive jeans worn by Prince during the murder, were recovered from Prince's home. Although defendant deleted his phone calls and social media activity at and near the time of the murder, his exchanges were nonetheless recovered through the phone records and social media accounts of the individuals with whom defendant communicated.[2]

During an interview with the police, defendant denied any role in the victim's murder. But, in addition to the circumstantial evidence obtained through phone records and social media, WF testified at defendant's trial, addressing defendant's role in the murder. While testifying, WF wore a face mask that apparently covered his nose and mouth during defendant's July 2021 trial. The attorneys raised concerns about hearing and understanding WF's testimony while wearing the mask. When the attorneys asked that he remove the mask, WF expressed that he did not "feel comfortable doin' that during this pandemic," and the trial court ruled that he did not have to unmask. Instead, WF was asked to adjust and speak closer to the microphone, and the ventilation system was shut off to allow the parties and the jury to better hear the testimony. At the conclusion of the testimony, the trial court denied defendant's request to provide an instruction addressing unfavorable inferences pertaining to the prosecutor's failure to produce witnesses, M Crim JI 5.12. Ultimately, the jury convicted defendant as charged.

## II. CONFRONTATION RIGHTS

Defendant contends that his rights under the Confrontation Clauses of the United States and Michigan Constitutions were violated when WF was permitted to testify while wearing a face mask. Specifically, defendant submits that the mask interfered with the jury's ability to assess WF's credibility by covering part of his face and the mask made WF's testimony difficult to understand. We conclude that defendant has failed to establish plain error arising from this unpreserved issue.

A defendant must preserve an issue by raising it before the trial court. *People v Swenor*, 336 Mich App 550, 562; 971 NW2d 33 (2021). This requirement applies to both constitutional and nonconstitutional issues. *Id*. "When a party raises a separate argument on appeal than the party raised before the trial court, the party must satisfy the standard for plain-error review." *Id*. Defendant acknowledges, and we agree, that defense counsel failed to preserve this issue for appellate review because a violation of the Confrontation Clauses was not raised in the trial court.

---

[2] Additional testimony concerned defendant's interactions with Prince, which were reflected on Prince's phone and Facebook accounts. This evidence included that Prince proposed to defendant shortly after the murder that they "do it again," and defendant admonished Prince for posting rap lyrics about the murder on Facebook.

Generally, whether a defendant's right of confrontation has been violated presents a question of constitutional law that the appellate court reviews de novo. *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018). When this Court engages in de novo review, the review is conducted independently without deference to the lower court. *Id*. However, this Court reviews unpreserved issues of constitutional error for plain error affecting a party's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999); *People v Lowrey*, 342 Mich App 99, 108-109; 993 NW2d 62 (2022). An error is plain if it is clear or obvious, and it affects substantial rights if it affected the outcome of the lower court proceedings. *Carines*, 460 Mich at 763. Additionally, reversal is only warranted if a defendant has shown actual innocence or that the error seriously affected the fairness, integrity, or public reputation of the proceedings. *People v Davis*, 509 Mich 52, 67-68; 983 NW2d 325 (2022).

The United States and Michigan Constitutions protect a defendant's right to confront the witnesses against him. US Const, Am VI; Const 1963, art 1, § 20. "A primary interest secured by the Confrontation Clause is the right of cross-examination." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993) (citations omitted). Indeed, "[t]he right of confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witness." *People v Watson*, 245 Mich App 572, 584; 629 NW2d 411 (2001) (citation omitted). Cross-examination is a valuable right of the accused to expose falsehoods and bring out the truth. See *Pointer v Texas*, 380 US 400, 404; 85 S Ct 1065; 13 L Ed 2d 923 (1965). However, the right of cross-examination is not unfettered; it does not include a right to cross-examine witnesses about irrelevant issues and may bend to other legitimate interests of trial procedure or societal expectations. *Adamski*, 198 Mich App at 138. Furthermore, face-to-face confrontation is not an indispensable element of the Confrontation Clause. *Maryland v Craig*, 497 US 836, 850; 110 S Ct 3157; 111 L Ed 2d 666 (1990).[3] The right may be satisfied without

---

[3] We recognize that in *People v Jemison*, 505 Mich 352, 363-365; 952 NW2d 394 (2020), our Supreme Court questioned the continued viability of the United States Supreme Court decision in *Craig* in light of *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004), and opted to limit *Craig*'s application to the facts, specifically addressing the circumstance of a child witness testifying by one-way video. *Id*. at 356 n 1 and 365. But, the confrontation rights delineated in *Crawford* were protected in this trial. Specifically, "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross[-]examination." *Crawford*, 541 US at 68. The Constitution demands confrontation and an "indicium of reliability" is insufficient for admission of testimonial statements. *Id*. at 68-69. Defendant was permitted to confront WF because he testified in-person at trial and was subject to cross-examination. And, the trial court was authorized to allow WF to wear a mask, see MRE 611(a)(1) and (b)(1), in a manner that allowed the jury to understand the testimony, yet protect WF who was subjected to conditions that made him more susceptible to the transmission of COVID-19. Thus, the factual circumstances of *Crawford* and *Jemison*, where out-of-court testimony was admitted, is not present here. Nonetheless, we address the broader unpreserved issue raised by the defense that challenges whether the right to confront witnesses is denied when the witness wears a mask while testifying in-person at trial during a continuing health crisis, an issue not squarely presented in *Crawford*, *Craig*, or *Jemison*.

face-to-face confrontation when "denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id*.[4] However, "[t]hat the face-to-face confrontation requirement is not absolute does not, of course, mean that it may easily be dispensed with." *Id*.

First, defendant asserts that the trial court's decision to allow WF to wear a face mask impaired the jury's ability to make important credibility determinations. Defendant has not established that a clear or obvious error occurred regarding this unpreserved issue.

An error is plain if it is clear or obvious. *Carines*, 460 Mich at 763. "An error is also plain when it is contrary to well-settled law." *Swenor*, 336 Mich App at 564. Defendant relies on *People v Sammons*, 191 Mich App 351; 478 NW2d 901 (1991), to assert that a face mask unconstitutionally infringes on a defendant's right of confrontation. However, *Sammons* is demonstrably distinguishable. In *Sammons*, 191 Mich App at 354, a police officer and an informant went to a hotel room to purchase a pound of cocaine. The defendant and the informant went into the bathroom purportedly to get the cocaine while the police officer spoke to two of the defendant's associates. After the defendant and the informant emerged from the bathroom, the defendant gave the informant a "sample" of the cocaine from a pile on the night stand. While the money was being counted, one of the defendant's associates went to retrieve the cocaine. Police officers arrived and arrested the defendant and his associates. One of the associates was arrested while entering a van, and a search of the vehicle revealed a sealed package of drugs. *Id*. at 354-355.

Before trial, the defendant raised the issue of entrapment. Specifically, the defendant claimed that the informant was known to him merely as "Rick." The defendant claimed that Rick pressured him into initiating and participating in the drug sale. The prosecutor called Rick to testify to rebut the defendant's allegations. Rick was allowed to testify while wearing a full-face mask and without disclosing his true identity.[5] Rick denied pressuring or threatening defendant, and the trial court rejected the defense theory of entrapment. *Id*. at 355-356.

This Court noted that, at the entrapment hearing, both the defendant and his sister testified about Rick's persistence in coordinating the sale of cocaine. In contrast, the prosecutor called Rick to testify while wearing a *full*-face mask, and the defense was instructed not to ask Rick any identifying questions. The trial court did admit Rick's criminal record but struck any identifying information. The trial court justified the procedure because the defendant or his associates purportedly offered a substantial quantity of drugs to kill Rick. *Id*. at 357-359.

This Court held that a witness's wearing of a full-face mask prevented the trial judge, as the trier of fact, from observing the witness's demeanor when testifying. Specifically, it was determined that "the irrelevance of a defendant's guilt or innocence in resolving an entrapment

---

[4] For instance, a defendant's right to face-to-face confrontation of child witnesses may be limited. See MCL 600.2163a; *People v Pesquera*, 244 Mich App 305, 311-312; 625 NW2d 407 (2001).

[5] On the record, the defense counsel described that the witness was wearing "a ski or some type of mask where his face and head" were not visible. *Sammons*, 191 Mich App at 363-364 n 4.

-4-

claim [did not] render[] the protections afforded by the Confrontation Clause inapplicable to an entrapment hearing." *Id*. at 361. Furthermore, because Michigan law did not permit the entrapment issue to be renewed at trial, the denial of protections afforded by the Confrontation Clause would deny the defendant the opportunity to challenge the evidence presented and impede a trial subject to rigorous adversarial testing. *Id*. at 361-362. This Court concluded "it would be fundamentally unfair, and contrary to principles of due process, to allow the state to present evidence designed to defeat a defendant's claim of entrapment and at the same time restrict the defendant's ability to effectively examine the reliability of such evidence." *Id*. at 362.

Applying the *Sammons* decision, defendant submits that the face mask worn by WF that apparently covered his mouth and nose deprived defendant of the right of confrontation because it limited the jury's ability to assess WF's credibility. However, the *Sammons* Court noted the unique scenario presented by an entrapment defense. Such a defense was resolved prior to trial, could not be renewed at trial, and restricted the defendant's ability to effectively challenge the reliability of the evidence when a full-face mask was worn by a witness.

In this case, the face mask worn by WF did not completely cover his face and apparently did not impair a viewing of WF's expressions or the ability to assess his credibility. Indeed, when WF was questioned regarding the number of visits to the victim's apartment, the attorneys and the trial court questioned whether WF's prior testimony addressed the arrival at the apartment complex itself as opposed to the entry into the victim's apartment. The trial court reached the conclusion that WF was confused by the questioning in light of WF's facial expressions.[6]

Our conclusion is also buttressed by recent caselaw holding that a defendant's Sixth Amendment Confrontation Clause rights were not violated when the witnesses against him testified while wearing partial face masks or coverings during the COVID-19 pandemic. In *United States v Maynard*, 90 F 4th 706 (CA 4, 2024),[7] the defendant, a police officer, was convicted of depriving a person of their constitutional rights under the color of law, 18 USC 242, for using force against an arrestee, and sentenced to 108 months' imprisonment. Before trial, the federal district court ordered everyone, including the witnesses, "to 'wear a face covering or mask, which cover[ed] both the wearer's nose and mouth, *at all* times.' " because of the COVID-19 pandemic. *Id*. at 709. The defendant challenged this order, asserting that it violated his Sixth Amendment right to confront the witnesses against him. *Id*. In lieu of opaque face masks or coverings, the defendant moved the trial court to allow the witnesses to wear a clear face shield. *Id*. The federal district court denied the defendant's motion after "finding that the mask requirement was 'necessary to ensure the safety of those present[]' and that 'face shields ha[d] not proven as effective as masks that cover the nose and mouth and seal around the wearer's face . . . .' " *Id*. On

---

[6] Specifically, the trial court stated, "I'm not tellin' ya how to answer the questions, but I think [WF], from looking at his facial expressions, is confused. So I'd, I think if you help clarify it, we could, he could, it'd assist his answering."

[7] Although decisions of lower federal courts are not binding on this Court, "they may be considered as persuasive authority." *People v Walker*, 328 Mich App 429, 444-445; 938 NW2d 31 (2019).

appeal, the defendant claimed that the Sixth Amendment's Confrontation Clause was violated by the requirement that witnesses wear masks while testifying. *Id*. at 710.

The *Maynard* Court acknowledged that the right to confrontation was not absolute and could be satisfied in the absence of physical face-to-face confrontation. *Id*. That is, the denial of face-to-face confrontation was appropriate when necessary to further an important public policy and the reliability of the testimony was "otherwise assured." *Id*. (quotation marks and citation omitted). The federal district court determined that protecting people against COVID-19 transmission was an important public policy interest. *Id*. The *Maynard* Court recognized that at the time of the defendant's trial in November 2021, more than 700,000 people in the United States had died from COVID-19 and that nearly 5,000 of those death were in West Virginia, where the defendant's trial took place. *Id*. at 710-711. In fact, the state recorded more than 350 new hospitalizations and 100 deaths in that week. *Id*. at 711. And the Centers for Disease Control and Prevention ("CDC") advised that even vaccinated people continue to wear masks indoors in public areas with substantial transmission. *Id*. The CDC further recommended that individuals "who were immunocompromised wear masks regardless of the level of community transmission." *Id*. These facts demonstrated that the federal district court's order was necessary to further an important public policy. *Id*.

The *Maynard* Court also rejected the defendant's assertion that *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004), was violated, determining that the *Crawford* Court found that testimonial hearsay statements were inadmissible at trial unless a witness was unavailable and a prior opportunity for cross-examination was shown. *Maynard*, 90 F 4th at 711. A test of the reliability of the hearsay statements was rejected in favor of the test of cross-examination. *Id*. The *Maynard* Court then determined that the requirement that the testimony be "otherwise assured" was satisfied because the witnesses testified under oath, were physically present in the courtroom, were subject to cross-examination, and had their demeanors observed by the jury and the defendant. *Id*. at 711-712. The *Maynard* Court further rejected the contention that masks "covering only a witness's nose and mouth" hindered the jury's ability to judge the witnesses' credibility. *Id*. at 712. It noted that a jury's assessment of credibility was not limited to facial expressions. *Id*. Rather, the jury also examined the words the witnesses said, the manner in which the words were said, the witnesses' body language, any pauses in the testimony, the mannerisms, and any other intangible factors. *Id*. In the *Maynard* trial, the witnesses testified in person and under oath, were subject to cross-examination, and could be seen and observed by the defendant and the jury. *Id*. Given these circumstances, the federal appellate court rejected the defendant's Confrontation Clause challenge to the district court's order requiring witnesses, who testified at a criminal trial held during the COVID-19 pandemic, wear partial face masks or coverings. *Id*.[8]

---

[8] In addition to health issues, a witness may also wear a facial mask, disguise, or veil for other reasons, including public safety and religious beliefs. *United States v de Jesus-Castenada*, 705 F 3d 1117, 1119 (CA 9, 2013), amended 712 F 3d 1283 (CA 9, 2013). In *de Jesus-Castenada*, the confidential informant, called as a witness, was continuing his participation in an ongoing investigation involving a drug cartel. For safety reasons, it was requested that this witness be

permitted to testify in disguise, specifically with a wig, a moustache, and sunglasses. The trial court allowed the witness to testify while wearing a wig and a moustache, but without the sunglasses. It concluded that the disguise was a "small impingement" on the jury's ability to assess the witness's credibility. *Id.* On appeal, the defendant claimed that the disguise violated the Confrontation Clause. The appellate court rejected this challenge, noting that the wig and mustache was "necessary to further an important state interest, namely a witness's safety, given that the safety concern was so high and the disguise so minimal." *Id.* at 1120. In making its request, the government delineated the geographical location and the dangerousness of the drug cartel. The appellate court affirmed the trial court's determination, noting that the witness was physically present in court, he testified under oath while being advised of the penalty for perjury, and was subject to cross-examination before the defendant. Although in disguise, the jury was able to hear the witness's voice, see his entire face and his facial reactions to questions, and observe his body language. Because the key elements of assessing witness demeanor and determining credibility were presented to the jury, the defendant's challenge to witness credibility premised on the Confrontation Clause was rejected. *Id.* at 1121.

In *People v Ketchens*, unpublished opinion of the California Court of Appeals, issued June 7, 2019 (Docket No. B282486), a witness was about to enter her vehicle when the rear window was shot out. The witness heard additional gunfire but did not see a shooting. She believed that the gun was fired from a red truck and relayed that information to the police, causing them to stop the occupants of the truck and locate a victim. *Id.* at slip op 3. At trial, the witness wore a scarf covering the majority of her face, including one of her eyes. The defense questioned the need for the witness to wear a scarf. Outside the presence of the jury, the witness explained that it was worn because of her Muslim faith. On the second day of trial, the witness appeared wearing the scarf, but both eyes were visible. The defense questioned whether the witness was wearing the scarf for religious reasons or because she was afraid. The defendant argued that requiring the witness to remove the scarf was a minor infringement on her First Amendment religious beliefs. When questioned about the visibility of both eyes, the witness agreed to also expose her nose if there was a "need" to see it. When asked why her religion did not permit a display of the rest of her face, the witness explained that it was to protect her beauty. *Id.* at slip op 10-13. On appeal, the appellate court acknowledged that a right to face-to-face confrontation evolved to prevent evidence premised on depositions or ex parte affidavits. But, it determined that covering a part of a witness's face did not necessarily implicate the Confrontation Clause. The witness's exposure of her eyes and nose and the finding that her lips were visible despite the scarf was likened to a man testifying with a beard. Because the purposes and benefits of face-to-face confrontation were not meaningfully impaired by the manner in which the witness wore her scarf on the second day of trial, the Confrontation Clause challenge was rejected. *Id.* at slip op 16-19. The *Ketchens* decision, like our unpublished opinions, does not constitute binding precedent, *id.* at slip op 1, but is cited as demonstrative of other face coverings that were challenged premised on the Confrontation Clause. But see *United States v Alimehmeti*, 284 F Supp 3d 477, 489 (2018) (rejecting a reporter's suggestion, that was opposed by the government and the defense, to have the witness testify in disguise by wearing makeup or a niqab, determining that such testimony might compromise the defendant's ability to confront his accusers and cause tension with the Confrontation Clause.).

In the present case, WF's masking was questioned because of the ability to understand his answers. When the possibility of mask removal was discussed, WF expressed his desire to continue wearing the mask in light of COVID-19. Indeed, when defendant's trial began on July 17, 2021, nearly 608,000 people in the United States had died from COVID-19.[9] In Michigan, there were over 235 new hospitalizations and 22 deaths that week, with both rates increasing.[10] Moreover, the CDC continued to recommend that even vaccinated individuals wear masks indoors when in public areas with substantial transmission. See *id*. at 711. The trial court did not require WF to remove his mask, but took other means to ensure that WF's testimony was understandable. The ventilation system was shut off and, afterward, there were no additional complaints about WF's mask.[11]

Additionally, defendant asserted that allowing WF to wear a face mask violated his right to confrontation by rendering WF's testimony difficult to understand. We reject this argument because, when WF could not be clearly understood, questions were reiterated and measures were taken to make him more understandable. There is no indication that defendant's right to cross-examine WF was impaired.

An inability to understand a witness may interfere with a defendant's right to cross-examine a witness. See *People v Cunningham*, 215 Mich App 652, 657; 546 NW2d 715 (1996) (addressing an inadequate translation). In this case, however, defendant has not established a clear or obvious error or that, if there was any error, it affected the outcome of his proceedings. Defendant also has not established that any resulting inability to hear each of WF's answers prejudiced him.

Defense counsel clearly expressed when WF could not be heard, resulting in questions being repeated and answered. Moreover, counsel asked WF to repeat his response when the answer was not clearly heard. The court asked defense counsel to let it know if WF could not be heard.[12] Further, whenever defense counsel—or any other party present—indicated that WF could

---

[9] See <https://covid.cdc.gov/covid-data-tracker/#trends_totaldeaths_select_00> (accessed April 29, 2024).

[10]See <https://covid.cdc.gov/covid-data-tracker/#trends_weeklyhospitaladmissions_weeklydeathcruderate_26> (accessed April 29, 2024).

[11] Defendant did not raise any claimed violation of the Confrontation Clause in the trial court. And, although vaccines were available at the time of trial, defendant did not question vaccination, transmission, or hospitalization rates and the need for WF to wear a mask.

[12] We note that, in *People v Coxton*, unpublished per curiam opinion of the Court of Appeals, issued February 28, 1997 (Docket No. 189562), p 2, this Court refused to reverse when there were many instances in the record "where other persons in the courtroom, including the prosecutor, court reporter and defense counsel, indicated that they could not hear what was being said" but "the judge, like the other people who did not hear what a witness said, asked that the testimony be repeated." Although the issue in that case was whether the defendant was entitled to a new trial

not be heard, the trial court took some action to make WF easier to hear. Indeed, the trial court took measures, including directing WF to speak into the microphone and apparently shutting off the ventilation system,[13] to improve the clarity of WF's testimony for the parties and the jurors listening to the testimony. After these measures were taken, there were no complaints of a continued inability to hear or understand WF's answers to the questions posed. And, on cross-examination, defense counsel was not limited in his questioning, but was allowed to cover questions and topics raised during direct examination. Accordingly, defendant has not demonstrated that any error in his ability to hear some of WF's answers affected the outcome of the lower court proceedings because there is no indication that defendant missed and was unable to respond to WF's testimony in a manner that impaired his ability to cross-examine him.[14]

---

on the basis that the *judge* could not hear what was being said, we also consider this case for its persuasive value.

[13] Specifically, the trial judge asked an employee whether "the noise [could be] turned off above [the jury] again." When directing that this noise be shut off, the trial judge stated that, "It may get warm in here."

[14] We also consider as persuasive several cases addressing "partial" face masks worn at trial during the COVID-19 pandemic. This Court has held that a partial face covering does not prevent the defendant from confronting the witness because the covering of a nose and mouth does not alter the difficulty level in ascertaining the credibility of testimony. See *People v Wilson*, unpublished per curiam opinion of the Court of Appeals, issued January 19, 2023 (Docket No. 356825), p 9. Although unpublished opinions are not binding, we may consider the rationale contained in an unpublished opinion to be persuasive. *People v Green*, 260 Mich App 710, 720 n 5; 680 NW2d 477 (2004); MCR 7.215(C)(1). Federal and other courts have similarly rejected constitutional challenges to the wearing of a face mask during the COVID-19 pandemic. See, e.g., *United States v O'Sullivan*, unpublished memorandum and order of the United States District Court for the Eastern District of New York, issued October 27, 2023 (Case No. 20-CR-272); *Lopez v Gamboa*, unpublished opinion and order of the United States District Court for the Central District of California, issued December 15, 2022 (Docket No. 22-cv-4281-JEM); *United States v Crittenden*, unpublished order of the United States District Court for the Middle District of Georgia, entered August 21, 2020 (Case No. 4:20-CR-7); *State v Hadlock*, 2021-Ohio-3176, unpublished opinion of the Ohio Court of Appeals, issued September 13, 2021 (the court permitted the witness, a doctor, to testify while masked after he stated his preference to wear a mask); *State v Raney*, 331 Or App 693; ___ P3d ___ (2024) ("the trial court did not err by requiring testifying witnesses to wear masks under the circumstances"); *People v Edwards*, 76 Cal App 5th 523; 291 Cal Rptr 3d 600 (2022) ("It does not violate the confrontation clause for a judge to order trial witnesses to wear masks during the current pandemic. The Constitution does not require judges to imperil public health."). Cf. *Smith v State*, ___ SW3d ___ (Tex Crim App, 2024) (Docket No. 14-23-00048-CR) (absent evidence necessitating "a prophylactic witness masking policy during a January 2023" jury trial, the court's directive compromised the defendant right to confrontation). Defendant did not identify authority to support his argument that the trial court committed any error, much less a clear or obvious error, by allowing a witness to testify while wearing a partial face mask during a global pandemic.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also submits that defense counsel provided ineffective assistance by failing to object to WF's wearing a face mask. This argument lacks merit because an objection on confrontation grounds would have been futile, and regardless, it is not reasonably likely that defendant would have obtained a different result because when WF could not be heard, remedial measures were taken.

A criminal defendant has a fundamental right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). The United States Supreme Court has observed that the rights to counsel, due process, and a fair trial are intertwined:

> [T]he Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial. The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause[.] [*Strickland v Washington*, 466 US 668, 684-685; 104 S Ct 2052; 80 L Ed 2d 674 (1984).]

"In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012) (citation omitted).

Defendant has not established that counsel's performance addressing WF's decision to wear a face mask during a pandemic fell below an objective standard of reasonableness. The defendant must overcome the strong presumption that defense counsel rendered adequate assistance and made "all significant decisions in the exercise of reasonable professional judgment." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). When applying this standard, the reviewing court must consider the range of possible reasons that counsel may have had for acting in that particular manner. *Id*. "[A] reasonably competent lawyer might want to avoid the appearance of bullying the witness . . . ." *People v Gioglio*, 296 Mich App 12, 26; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012). Defense counsel is not required to make meritless or futile objections. *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015).

Although no binding caselaw has been issued regarding whether a witness's wearing a face mask during the COVID-19 pandemic violated a defendant's right to confrontation, as previously discussed, the available authority indicates that such an objection would have been meritless. Counsel may have believed that a challenge would be unsuccessful or that insisting that a clearly reluctant witness unmask would be perceived by the jury as bullying the witness. Defense counsel's decision not to raise this issue was not objectively unreasonable.

Similarly, defendant has not established that, but for counsel's performance, there was a reasonable probability that defendant would have received a different outcome. Again, defense counsel repeatedly indicated when WF could not be understood, questions were repeated until

audible answers were given, and measures were taken to make WF's responses clearer and to reduce noise in the courtroom. Because the record does not indicate that defendant was rendered unable to confront or cross-examine WF because he was wearing a face mask, there is no indication that a different result was reasonably likely had defense counsel objected to WF's wearing a face mask.

## IV. MISSING-WITNESS INSTRUCTION

Defendant contends that the trial court erred by failing to issue a jury instruction allowing the jury to infer that two witnesses, one male and one female, would have provided evidence unfavorable to the prosecution. We disagree.

This Court reviews for an abuse of discretion the trial court's determinations regarding whether to issue a missing-witness instruction and whether the prosecution exercised due diligence. *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004). The trial court abuses its discretion when it commits an error of law or uses an incorrect legal framework. *People v Everett*, 318 Mich App 511, 516; 899 NW2d 94 (2017). The trial court also abuses its discretion when its decision falls outside the range of principled outcomes. *Id*.

MCL 767.40a addresses the prosecution's obligation to identify and produce witnesses, and it provides in pertinent part as follows:

> (3) Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial.

> (4) The prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties.

This statute provides the defendant with notice of potential witnesses. *Everett*, 318 Mich App at 518. If a prosecutor endorses a witness under MCL 767.47a(3), the prosecutor "is obliged to exercise due diligence to produce that witness at trial." *Eccles*, 260 Mich App at 388. If a prosecutor fails to exercise due diligence to produce the witness, the jury should be issued a missing-witness instruction:

> A prosecutor who fails to produce an endorsed witness may show that the witness could not be produced despite the exercise of due diligence. If the trial court finds a lack of due diligence, the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case. [*Id*. (citations omitted).]

"[D]ue diligence is the attempt to do everything reasonable, not everything possible, to obtain the presence of a witness." *Id*. at 391, citing *People v Cummings*, 171 Mich App 577, 585; 430 NW2d 790 (1988).

In this case, the lead detective testified that he interviewed defendant after statements were made by a female witness that defendant and the victim had been together at her residence the

-11-

night before the murder, with the male witness and some others. The female witness indicated that she had a concealed pistol license and a pistol, which she turned over to the police. Defendant argued that the testimony of these witnesses was important to his case because one of the witnesses owned the only gun that had been admitted into evidence. He proffered that the testimony of the female witness was pertinent because she may have testified about who may have used the gun and whether it went missing.

On the last day of the prosecution's proofs, the prosecutor stated that he had been unable to secure the attendance of these two witnesses, who lived together. The prosecutor outlined the efforts that had been made to secure the attendance of these witnesses.[15] According to the prosecutor, the police attempted to serve them at two different addresses on three different dates. The female witness had reported a change of address, but when the investigator attempted to serve the witnesses there, the investigator saw no cars and reported that the grass appeared overgrown. The prosecutor personally attempted to contact the female witness via the phone number provided for a previous trial eight separate times over three weeks. The phone number rang, was answered, and then was immediately hung up. The prosecutor attempted calling from different phone numbers. The prosecutor also attempted to use two jail systems to determine whether either witness was imprisoned and discovered that both had been arrested but were no longer in custody.

Although defendant argues that the prosecutor could have sought to determine whether the female witness had a new phone number, the prosecution was not required to do everything possible to locate the witnesses. Additionally, it is reasonable to infer that the witness continued to have the same number because the phone rang, was picked up, and then was hung up, rather than going to voicemail or simply going unanswered. We conclude that the trial court's decision

---

[15] To the extent that defendant argues that no testimony was offered to support the prosecutor's statements, we note that, when the trial court has no reason to doubt the candor of a licensed attorney's representation to the court, it may accept that attorney's assertions to the court. *People v Dunbar*, 463 Mich 606, 617, n 13; 625 NW2d 1 (2001). In the absence of some indication that the prosecutor was not telling the truth, the absence of sworn testimony to support the prosecutor's statements does not warrant reversal.

to decline to issue a missing-witness instruction after determining that the prosecution exercised due diligence to secure the attendance of the witnesses did not fall outside the range of principled outcomes.[16]

     Affirmed.

/s/ Anica Letica
/s/ Allie Greenleaf Maldonado

---

[16] We note that defendant recently filed a Standard-4 brief. Administrative Order No. 2004-6, 471 Mich c, cii (2004). However, defendant's brief failed to cite to any errors in the record and failed to cite any authority in support of his claim of errors. In fact, defendant merely compiled a paragraph of legal terms and concluded that if the appeal was reviewed in "all" areas, he would be entitled to relief. The simple announcement of a position without adequate development and citation to authority results in the abandonment of the argument. *People v Waclawski*, 286 Mich App 634, 679; 780 NW2d 321 (2009). We will not discover and rationalize the basis for a defendant's claim of error and then search for authority to sustain or reject the position. *Id*.